## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| DAVID MOORE D/B/A MOORE FAMILY FARMS; TOWNSEND BROTHERS AG ENTERPRISES, LLC; BONNE IDEE PRODUCE, LLC; FLOWERS FARMS, LLC; BOWLES FARMING COMPANY, INC.; KEVIN RENTZ, AMANDA CALHOUN RENTZ, DENNIS BRUCE RENTZ, AND KARLA JO RENTZ INDIVIDUALLY AND COLLECTIVELY D/B/A RENTZ FAMILY FARMS; KEVIN COGGINS D/B/A MEK FARMS; POWE FARMS MANAGEMENT LLC; AGROPECARIO LOS AMERICANOS S.C. DE R.L. DE C.V.; CE COMERCIAL, S.A.C.; GLOBAL FRESH S.A.C.; PEPAS TROPICALES DEL PERU, S.A.C.; and PHIL SANDIFER & SONS FARMS LLC, | Case No. 0:20-cv-0252 (PJS/HB) |
| Plaintiffs, | **SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| C.H. ROBINSON WORLDWIDE, INC.; C.H. ROBINSON COMPANY, INC.; and C.H. ROBINSON COMPANY, | |
| Defendants. | |

Plaintiffs, David Moore d/b/a Moore Family Farms, Townsend Brothers Ag

Enterprises, LLC, Bonne Idee Produce, LLC, Flowers Farms, LLC, Bowles

Farming Company, Inc., Kevin Rentz, Amanda Calhoun Rentz, Dennis Bruce

Rentz, and Karla Jo Rentz individually and collectively d/b/a Rentz Family

Farms, Kevin Coggins d/b/a MEK Farms, Powe Farms Management LLC,

Agropecario Los Americanos S.C. de R.L. de C.V., CE Comercial, S.A.C., Global

Fresh S.A.C., Pepas Tropicales del Peru, S.A.C., and Phil Sandifer & Sons Farms

LLC by way of Complaint against Defendants, C.H. Robinson Worldwide, Inc.,

C.H. Robinson Company, Inc., and C.H. Robinson Company, jointly and

severally, allege and state as follows:

## I.   AMENDED PLEADING

1.     The Court's Order [Doc. 59] consolidated the civil action entitled

*Townsend Brothers AG Enterprises, LLC, et al. v. C.H. Robinson, et al.*, Case No. 18-

cv-3348 (PJS/HB) (D.Minn.) and granted leave to file this Complaint. By filing

this Complaint: (A) Plaintiffs' claims alleged in the previously filed Complaints

in this action [*i.e.*, Docs. 1 and 36] and the previously filed Complaints in

*Townsend* [Docs. 1, 16, 35, and 112] but which are not alleged in this Complaint

are deemed to be voluntarily dismissed without prejudice; and (B) the claims of

those persons who were named as a plaintiff in those previously filed

Complaints but who are not named in this Complaint are deemed to be

voluntarily dismissed without prejudice.

## II.    NATURE OF THE ACTION

2.    Plaintiffs agreed to grow, harvest, and pack for shipment specific quantities of fresh fruits and vegetables and appointed one or more of the Defendants as their exclusive sales agent to sell those fresh fruits and vegetables.

3.    The contracts, written by Defendants, gave them the exclusive right to sell Plaintiffs' produce; not even Plaintiffs could not sell their own produce.

4.    With the rights Defendants acquired came duties Defendants owed to each Plaintiff such as a duty of loyalty to act consistent with Plaintiffs' interests and not in conflict with those interests.

5.    The duties Defendants owed to each Plaintiff arise under the Perishable Agricultural Commodities Act of 1930 ("PACA"), 7 U.S.C. § 499a, *et seq.*, state law, and Defendants' contracts with each Plaintiff.

6.    In breach of those duties, Defendants pursued their own interests. Defendants' self-interest conflicted with each Plaintiff's interests because Defendants decided to stop selling Plaintiffs' produce for the rest of the season despite Defendants' ability to sell Plaintiffs' produce.

7.    As a result of Defendants' breach, the produce rotted, became unfit for consumption, and otherwise was left unharvested and unsold causing each Plaintiff to suffer damages.

### III.    PARTIES.

*A.    Plaintiffs.*

1.    *David Moore d/b/a Moore Family Farms* is a Texas general partnership with its principal place of business located in Dalhart, Dallam County, Texas. The sole proprietor is David Moore, who is a resident and citizen of the State of Texas.

2.    *Townsend Brothers Ag Enterprises, LLC* is a Florida limited liability company with principal offices in Live Oak, Florida. The members of Townsend are Donald L. Townsend and Clifford D. Townsend, both of whom are residents and citizens of the State of Florida.

3.    *Bonne Idee Produce, LLC* is a Louisiana limited liability company with principal offices in Bonita, Louisiana. The principal of Bonne Idee is Brian Barham, who is a resident and citizen of the State of Louisiana.

4.    *Flowers Farms, LLC* is a South Carolina limited liability company with principal offices in Summerton, South Carolina. The members of Plaintiff Flowers Farms, LLC are Roger L Flowers, Sr. and Roger L Flowers, Jr., both of whom are residents and citizens of the State of South Carolina.

5.    *Bowles Farming Company, Inc.* is a California corporation with its principal place of business in Los Banos, Merced County, California.

6.      *Kevin Rentz, Amanda Calhoun Rentz, Dennis Bruce Rentz, and Karla Jo Rentz individually and collectively d/b/a Rentz Family Farms* is a Georgia general partnership with its principal place of business located in Brinson, Decatur County, Georgia.

7.      *Kevin Coggins d/b/a MEK Farms* is a Georgia sole proprietorship with his principal offices in Lake Park, Georgia, reporting as its member, Kevin Coggins, who is a resident and citizen of the State of Georgia.

8.      *Powe Farms Management LLC* is a Georgia Limited Liability Company with its principal offices in Cairo, Georgia. The members of Powe are residents and citizens of the State of Georgia.

9.      *Agropecario Los Americanos S.C. de R.L. de C.V.,* is a Mexican corporation with its principal offices in Hermosillo, Sonora, Mexico.

10.     *CE Comercial, S.A.C.* is a Peruvian corporation with principal offices in Lima, Peru.

11.     *Global Fresh S.A.C.* is a Peruvian corporation with principal offices in Lima, Peru.

12.     *Pepas Tropicales del Peru, S.A.C.* is a Peruvian corporation with principal offices in Lima, Peru.

13.    *Phil Sandifer & Sons Farms LLC* is a South Carolina Limited Liability Company with principal offices in Blackwell, South Carolina. The members of Sandifer are residents and citizens of the State of South Carolina.

**B.    Defendants.**

14.    *C.H. Robinson Worldwide, Inc.* ("CHRW") is a publicly traded Delaware corporation with its principal place of business in Eden Prairie, Minnesota.

15.    CHRW maintains its principal place of business in Eden Prairie, Minnesota.

16.    CHRW is a publicly traded company listed on the NASDAQ Stock Market under ticker symbol CHRW.

17.    *C.H. Robinson Company, Inc.* ("CHRI") is a Minnesota corporation and, on information and belief, is a wholly owned subsidiary of CHRW.

18.    CHRI maintains its principal place of business in Eden Prairie, Minnesota.

19.    CHRI maintains its principal place of business in the same office as CHRW.

20.    *C.H. Robinson Company* ("CHRC") is a Delaware corporation and, on information and belief, is a wholly owned subsidiary of CHRW.

21.     CHRC maintains its principal place of business in Eden Prairie,

Minnesota.

22.     CHRC maintains its principal place of business in the same office as

CHRW and CHRI.

## IV.     JURISDICTION AND VENUE.

23.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331

with respect to Plaintiffs' claims arising under federal law and supplemental

jurisdiction under 28 U.S.C. § 1367 with respect to all other claims, including

claims arising under state law, because those claims arise from the same conduct

which gives rise to Plaintiffs' federal law claims.

24.     Venue is proper in this district under 28 U.S.C. § 1391 due to the

contractual venue provision contained in Defendants' contracts with each

Plaintiff and because each Defendant resides within this jurisdiction.

## V.     ALLEGATIONS OF FACT

25.     At all times relevant to this Complaint, Defendants collaborated to

conduct a business under the name "Robinson Fresh®" or "Robinson Fresh."

26.     Robinson Fresh® is a trademark registered to CHRW in the U.S.

Patent and Trademark Office.

27.     Robinson Fresh is not the name of a legal person.

28.     Defendants use the Robinson Fresh name to identify their produce distribution business which includes the buying, selling, and marketing of fresh fruits, vegetables, and other perishable items involving growers, grocery retailers, restaurants, foodservice distributors, and produce wholesalers along with the sourcing of providers for the buying, selling, and marketing of such items.

29.     Based on publicly available information, it appears that Charles Henry Robinson founded a business in North Dakota as a middleman for the supply of fresh, perishable fruits and vegetables and incorporated that business in 1905.

30.     The original business eventually grew into a nationwide produce distribution business, currently called Robinson Fresh, while expanding into the business of providing freight logistics services which now dwarfs the Robinson Fresh business. More specifically, CHRW's SEC filings for year-end 2018 disclosed that the Robinson Fresh® business represented only about 4% of CHRW's net revenues from all its businesses.

31.     To obtain a supply of produce Defendants entered into written agreements with Plaintiffs and other growers.

32.     Defendants drafted those agreements.

33.      Although some of the terms vary amongst the agreements, each

agreement:

      33.01.      identifies specific produce which is the subject of the

      agreement, such as (but not limited to) cucumbers, seedless

      watermelons, and asparagus which the agreement defines as the

      "Products;"

      33.02.      required each Plaintiff to plant a specified quantity of the

      Products and to harvest and box those Products;

      33.03.      permits Defendants—and only Defendants— to "market such

      Products on a consignment basis" as each Plaintiff's' appointed

      "exclusive sales agent for the sale of the Products;"

      33.04.      each Plaintiff retains title to and all quality risks associated

      with all Products until delivery to and acceptance by Defendants'

      customer.

      33.05.      compensates Defendants by use of a commission which is

      calculated based on the "FOB price;"

      33.06.      provides that, in a dispute between the parties, the prevailing

      party may recovery reasonable attorney's fees; and

      33.07.      requires application of Minnesota state law.

34.      In the agreements with Plaintiffs and other growers, Defendants

identified themselves in a variety of ways including:

      34.01.      "C.H. Robinson Company"

34.02.    "C.H. Robinson Company, with its principal branch offices located at 14800 Charlson Road, Eden Prairie, MIN 55347, doing business as ROBINSON FRESH"

34.03.    "C.H. Robinson Company, with its principal branch offices located at 14800 Charlson Road, Eden Prairie, MN 5S347 ('C.H. ROBINSON')"

34.04.    "C.H. Robinson Company, dba Robinson Fresh"

34.05.    "C.H. Robinson Company doing business as Robinson Fresh"

34.06.    "C.H. Robinson Company, with its principal branch offices located at 14800 Charlson Road, Eden Prairie, MN 55347, on behalf of itself and its licensed affiliates, dba Robinson Fresh ('Robinson Fresh')"

34.07.    "C.H. Robinson Company dba Robinson Fresh, with principal offices at 14701 Charlson Road, Eden Prairie, MN 55347, for itself and on behalf of its affiliate and subsidiary entities ('Robinson Fresh')"

34.08.    "C.H. Robinson Company, Inc."

34.09.    "C.H. Robinson Company, Inc. dba Timco Worldwide, a C.H. Robinson Company ('Timco')"

34.10.    "C.H. Robinson Company, Inc. on behalf of itself and its operating subsidiaries, with its principal branch offices located at 14701 Charlson Road, Eden Prairie, MN 55347 doing business as Robinson Fresh ('Robinson Fresh')"

35.     In some agreements with some Plaintiffs, the Defendants identified themselves as "C.H. Robinson Company" while the signature block was in the name of "C.H. Robinson Worldwide, Inc."

36.     Defendants' performance under their agreements with Plaintiffs and other growers qualified Defendants as a "commission merchant," a "dealer," and/or a "broker" as defined by the Perishable Agricultural Commodities Act, 1930 ("PACA), 7 U.S.C. § 499a(b)(5), (6), and (7).

37.     According to the website at, https://apps.mrp.usda.gov/public_search ("PACA Website"):

> The ePACA Portal and PACA Search are hosted on the AMS ServiceNow platform, authorized to contain information in a secure manner that meets federal information security requirements. AMS ServiceNow is an information technology (IT) service management platform, managed by the USDA Office of Marketing and Regulatory Programs (MRP). AMS ServiceNow collects the following types of information: PACA license entity names, email addresses, contact numbers, physical and mailing addresses, and business tax identification or employer identification number (EIN). The information collected is used to administer licensing provisions under the Perishable Agricultural Commodities Act (PACA), to adjudicate contract disputes, and to enforce the PACA. Data deemed not to be business proprietary information is publicly available on the internet to any internal organization for information and research purposes. Individuals

may contact the PACA Division regarding questions
relating to their records in the ePACA Portal.

[accessed April 10, 2020.]

38.    Based on a search conducted using the PACA Website on April 10,

2020, CHRW *never* held a PACA licensed.

39.    Based on a search of federal district court dockets, CHRW has

represented to district courts sitting in Arizona, California, Florida, Georgia,

New Jersey, New York, North Carolina, Ohio, and Texas that it holds a PACA

license including:

39.01.    *Arizona.* In the District of Arizona, CHRW filed Document 1

on July 23, 2019 in *C.H. Robinson Worldwide, Inc. vs. Osman Produce,*

*LLC, et al.*, Case 4:19-cv-00372 (D.Ariz.) and, in ¶3 of that document,

CHRW alleged it "is engaged in the business of selling wholesale

quantities of fresh fruits and vegetables nationwide" and holds

"federal produce license number 20001042 from the U.S. Department

of Agriculture/PACA Branch."

39.02.    *Arizona.* Recently, CHRW filed Document 1 on February 27,

2020 in the District of Arizona in *C.H. Robinson Worldwide, Inc., d/b/a*

*C.H. Robinson Company, Inc. d/b/a C.H. Robinson Company d/b/a*

*Robinson Fresh vs. Arizona Lemons LLC, et al.*, Case 2:20-cv-00426

(D.Ariz.) and, in ¶4 of that document, CHRW alleged it "is engaged

in the business of selling wholesale quantities of fresh fruits and

vegetables nationwide" and holds "federal produce license number 20001042 from the U.S. Department of Agriculture/PACA Branch."

39.03.    *California.* In the Central District of California, CHRW filed Document 1 on September 8, 2015 in *C.H. Robinson Worldwide, Inc. d/b/a Robinson Fresh vs. Global Fresh, Inc., et al.*, Case 2:15-cv-07082 (C.D.Ca.) and, in ¶3 of that document, CHRW alleged that it "is engaged in the business of selling wholesale quantities of fresh fruits and vegetables in interstate commerce" and "maintains PACA license number 19701419."

39.04.    *Florida.* In the Middle District of Florida, CHRW filed Document 1 filed on April 17, 2019 in *C.H. Robinson Worldwide, Inc., d/b/a C.H. Robinson Company d/b/a Robinson Fresh vs. Phillips Produce LLC, et al.*, Case 8:19-cv-00916 (M.D.Fla.) and, in ¶3 of that document, CHRW alleged it "is engaged in the business of selling wholesale quantities of fresh fruits and vegetables nationwide" and holds "federal produce license number 20001042 from the U.S. Department of Agriculture/PACA Branch."

39.05.    *Florida.* Again in the Middle District of Florida, CHRW filed Document 1 on November 20, 2017 in *C.H. Robinson Worldwide, Inc. v. Carl J. Denholtz, et al.*, Case 2:17-cv-00641 (M.D.Fla.) and, in ¶3 of that document, CHRW alleged that it "is engaged in the business of selling perishable agricultural commodities ('Produce') in interstate commerce" and "maintains PACA license number 19701419"—a license number which is different from the license number identified

in CHRW's document filed just seven months earlier albeit in a different case but in the same district court.

39.06.   *Georgia.* In the Northern District of Georgia, CHRW filed Document 91 on December 29, 2015 in *Evergreen Farms & Produce, LLC, et al. v. ABL Farms, Inc., et al.*, Case 1:15-cv-03171 (N.D.Ga.) which is a declaration made pursuant to 28 U.S.C. § 1736 by Mark Petersen as General Manager of "the CPDS division of C.H. Robinson Worldwide, Inc." and, at ¶2, Mr. Petersen states under penalty of perjury that CHRW "is licensed by the USDA-PACA, and currently holds valid PACA license number 19701419." The declaration attached several documents including, at page 11 of 46, an invoice which, at the top of the page, appears to be from CHRW and "Subsidiaries" but, at the bottom of the page, provides the name, address, telephone number, and Tax ID number for CHRC.

39.07.   *New Jersey.* Document 71 filed by CHRW in *Eagle Fruit Traders, LLC v. Ultra Fresh, LLC, et al.*, Case 2:18-cv-14541 (D.N.J.) in which, at ¶3, CHRW alleged it "is engaged in the business of selling wholesale quantities of fresh fruits and vegetables nationwide" and holds "federal produce license number 20001042 from the U.S. Department of Agriculture/PACA Branch."

39.08.   *New York.* Document 1 filed by CHRW on September 23, 2019 in *C.H. Robinson Worldwide, Inc., d/b/a C.H. Robinson Company d/b/a Robinson Fresh vs. CKF Produce Corp., et al.*, Case 1:19-cv-05403 (E.D.N.Y.) in which, at ¶3, CHRW alleged it "is engaged in the business of selling wholesale quantities of fresh fruits and vegetables

nationwide" and holds "federal produce license number 20001042 from the U.S. Department of Agriculture/PACA Branch."

39.09.   *North Carolina.* In the Eastern District of North Carolina, CHRW filed Document 18 on February 8, 2019 in *L & M Companies, et al. v. Unique Food Company, Inc. et al.* Case 5:19-cv-00027 (E.D.N.C.) and, in ¶3 of that document, CHRW alleged it "is engaged in the business of selling wholesale quantities of fresh produce in interstate commerce, and is licensed by the USDA-PACA Division, License Number 19701419."

39.10.   *Ohio.* In the Northern District of Ohio, CHRW filed Document 1 on December 11, 2018 and Document 19 on August 6, 2019 in *C.H. Robinson Worldwide, Inc., et al. v. P.K. Produce, Inc., et al.,* Case 1:18-cv-02849 (N.D.Ohio) and, in ¶3 of each of those documents, CHRW alleged it is "engaged in the business of selling wholesale quantities of fresh fruit and vegetables nationwide through interstate commerce" and holds "federal produce license number 19701419 from the U.S. Department of Agriculture/PACA Branch."

39.11.   *Texas.* In the Western District of Texas, CHRW filed Document 1 on July 1, 2019 in *C.H. Robinson Worldwide, Inc., d/b/a C.H. Robinson Company d/b/a Robinson Fresh vs. Centex Produce, Inc., et al.,* Case 1:19-cv-00672 (W.D.Tex) and, in ¶3 of that document, CHRW alleged it "is engaged in the business of selling wholesale quantities of fresh fruits and vegetables nationwide" and holds "federal produce license number 20001042 from the U.S. Department of Agriculture/PACA Branch."

40.     Based on a search conducted using the PACA Website on April 10, 2020 of a business name, a branch name, or a trade name which contains "worldwide" resulted in no Defendant identified as a business name, no Defendant identified as a branch name, and CHRW's name appearing as a trade name with respect to License Nos. 19701419, 20001042, and 20001043.

41.     Based on a search conducted using the PACA Website on April 10, 2020 of PACA License Number 19701419, the license is terminated, and the licensee was CHRC with associated trade names of "C H ROBINSON WORLDWIDE INC" and "ROBINSON FRESH."

42.     On information and belief, "C H ROBINSON WORLDWIDE INC" is the legal name of CHRW and is not a trade name, alternate name, fictitious name, assumed name, or other name which CHRC is authorized to use by the State of Delaware (where CHRC is incorporated) or by any other State in which CHRC transacts business.

43.     On information and belief, "ROBINSON FRESH" is a registered trade name owned by CHRW and is not a trade name, alternate name, fictitious name, assumed name, or other name which CHRC is authorized to use by the State of Delaware (where CHRC is incorporated) or by any other State in which CHRC transacts business.

44.     Based on a search conducted using the PACA Website on April 10, 2020 of PACA License Number 20001042, the license is active and the licensee is CHRI with associated trade names of "C H ROBINSON COMPANY", "ROBINSON FRESH", and "C H ROBINSON WORLDWIDE INC".

45.     On information and belief, "C H ROBINSON WORLDWIDE INC" is the legal name of CHRW and is not a trade name, alternate name, fictitious name, assumed name, or other name which CHRI is authorized to use by the State of Minnesota (where CHRI is incorporated) or by any other State in which CHRI transacts business.

46.     On information and belief, "C H ROBINSON COMPANY" is the legal name of CHRC and is not a trade name, alternate name, fictitious name, assumed name, or other name which CHRI is authorized to use by the State of Minnesota (where CHRI is incorporated) or by any other State in which CHRI transacts business.

47.     On information and belief, "ROBINSON FRESH" is a registered trade name owned by CHRW and is not a trade name, alternate name, fictitious name, assumed name, or other name which CHRI is authorized to use by the State of Minnesota (where CHRI is incorporated) or by any other State in which CHRI transacts business.

48.     Based on a search conducted using the PACA Website on April 10, 2020 of PACA License Number 20001043, the license is terminated, and the licensee was CH Robinson Company LP with one associated trade name, "C H ROBINSON WORLDWIDE INC".

49.     On information and belief, CHRC and CHRI entered into a written agreement dated January 1, 2009 in which CHRC permitted CHRI to use CHRC's "trade name" but that agreement does not state CHRC's trade name.

50.     Based on a search conducted using the website of the Office of the Minnesota Secretary of State, https://mblsportal.sos.state.mn.us/Business/Search, on April 10, 2020  for "C.H. Robinson Company, Inc." resulted with no filing of any assumed name certificate pursuant to Minn. Stat. §333.01 which prohibits the use of any name other than CHRI's "true name" (*i.e.*¸ the name on its certificate of incorporation) or the name on a filed assumed name certificate.

51.     Based on a search conducted using the website of the Office of the Minnesota Secretary of State, https://mblsportal.sos.state.mn.us/Business/Search, on April 10, 2020  for "C.H. Robinson Worldwide, Inc." resulted with no filing of any assumed name certificate pursuant to Minn. Stat. §333.01 which prohibits the use of any name other than CHRW's "true name" (*i.e.*¸ the name on its certificate of incorporation) or the name on a filed assumed name certificate.

52.     Based on a search conducted using the website of the Office of the

Minnesota Secretary of State, https://mblsportal.sos.state.mn.us/Business/Search,

on April 10, 2020  for "C.H. Robinson Company" resulted with no filing of any

assumed name certificate pursuant to Minn. Stat. §333.01 which prohibits the use

of any name other than CHRC's "true name" (*i.e.*, the name on its certificate of

incorporation) or the name on a filed assumed name certificate.

53.     On information and belief, all natural persons employed to work in

the Robinson Fresh business are employees of and paid by CHRW.

54.     By referring to their business as Robinson Fresh, by CHRW

representing to federal district courts that CHRW is doing business as CHRC, by

CHRW also representing to federal district courts that CHRW is doing business

as CHRC, by CHRW also representing to federal district courts that CHRW is

doing business as CHRI, by CHRW also representing to federal district courts

that CHRW is doing business as Robinson Fresh, by CHRC's representation to

the U.S. Department of Agriculture that CHRW, CHRC, and Robinson Fresh are

CHRC's trade names (notwithstanding CHRC's failure to file assumed named

certificates), by the fact that CHRC and CHRI are wholly-owned subsidiaries of

CHRW, and by the manner in which Defendants have identified themselves in

their agreements with Plaintiffs, Defendants' collective participation in the

Robinson Fresh business created a joint enterprise, unincorporated association, or *de facto* partnership making all Defendants jointly and severally liable for the breach of legal duties owed by any of them to each Plaintiff.

55.     Until Defendants refused to sell each Plaintiff's Products, each Plaintiff complied with its obligations to grow, harvest, and pack the Products for shipment.

56.     Unbeknownst to each Plaintiff, Defendants contracted with other growers in each Plaintiff's geographic area pursuant to written agreements drafted by Defendants under which those other growers agreed to grow specified quantities of, and to harvest and pack, the same Products as the Plaintiff had agreed with Defendants to grow, harvest, and pack.

57.     As a result, Defendants undertook being the exclusive sales agent for multiple growers of the same Products in relative proximity to each other.

58.     As a result, Defendants unilaterally chose not to market or to delay the sale of the Plaintiff's Products despite the Plaintiff having grown, harvested, and packed the Products for shipment in accordance with its contract with Defendants and that Defendants could have sold the Plaintiff's Products without delay.

59.     As a result of Defendants' actions, each Plaintiff was left with Products which could not be harvested, and which Plaintiffs were prohibited from selling on their own.

60.     As a result of Defendants' actions, the Products which each Plaintiff harvested and prepared for shipment by each Plaintiff perished.

61.     As a result of Defendants' actions, the Products which Defendants delayed the sale had an increase in returns as the Products spoiled.

62.     As a result of the Defendants' control of the right to sell each Plaintiff's Products, Plaintiffs could not mitigate their damages by selling the Products on their own or through another marketer. Further, by the time the Defendants' refusal to market each Plaintiff's Products became apparent to the Plaintiff, market conditions were such that no other distributors were available for the sale of the Plaintiff's Products.

63.     Pursuant to the contract between Townsend Brothers Ag Enterprises, LLC and Defendants, Townsend Brothers Ag Enterprises, LLC agreed to grow, harvest, and pack watermelons for the 2018 season and appointed Defendants as its exclusive sales agent but Defendants chose to not sell or to delay the sale of some or all of that Product.

64.     Pursuant to the contract between Bonne Idee Produce, LLC and Defendants, Bonne Idee Produce, LLC agreed to grow, harvest, and pack watermleons for the 2017season and appointed Defendants as its exclusive sales agent but Defendants chose to not sell or to delay the sale of some or all of that Product.

65.     Pursuant to the contract between Flowers Farms, LLC and Defendants, Flowers Farms, LLC agreed to grow, harvest, and pack watermelons for the 2018 season and appointed Defendants as its exclusive sales agent but Defendants chose to not sell or to delay the sale of some or all of that Product.

66.     Pursuant to the contract between David Moore d/b/a Moore Family Farms and Defendants, David Moore d/b/a Moore Family Farms agreed to grow, harvest, and pack watermelons for the 2016 and 2017 season and appointed Defendants as its exclusive sales agent but Defendants chose to not sell or to delay the sale of some or all of that Product.

67.     Pursuant to the contract between Bowles Farming Company, Inc. and Defendants, Bowles Farming Company, Inc. agreed to grow, harvest, and pack watermelons for the 2018 season and appointed Defendants as its exclusive sales agent but Defendants chose to not sell or to delay the sale of some or all of that Product.

68.     Pursuant to the contract between Kevin Rentz, Amanda Calhoun Rentz, Dennis Bruce Rentz, and Karla Jo Rentz individually and collectively d/b/a Rentz Family Farms and Defendants, Kevin Rentz, Amanda Calhoun Rentz, Dennis Bruce Rentz, and Karla Jo Rentz individually and collectively d/b/a Rentz Family Farms agreed to grow, harvest, and pack watermelon and cantaloupes for the 2018 season and appointed Defendants as its exclusive sales agent but Defendants chose to not sell or to delay the sale of some or all of that Product.

69.     Pursuant to the contract between Kevin Coggins d/b/a MEK Farms and Defendants, Kevin Coggins d/b/a MEK Farms agreed to grow, harvest, and pack watermelons for the 2018 season and appointed Defendants as its exclusive sales agent but Defendants chose to not sell or to delay the sale of some or all of that Product.

70.     Pursuant to the contract between Powe Farms Management LLC and Defendants, Powe Farms Management LLC agreed to grow, harvest, and pack squash for the 2019 season and appointed Defendants as its exclusive sales agent but Defendants chose to not sell or to delay the sale of some or all of that Product.

71.    Pursuant to the contract between Agropecario Los Americanos S.C. de R.L. de C.V. and Defendants, Agropecario Los Americanos S.C. de R.L. de C.V. agreed to grow, harvest, and pack watermelons for the 2017 - 2018 season and appointed Defendants as its exclusive sales agent but Defendants chose to not sell or to delay the sale of some or all of that Product.

72.    Pursuant to the contract between CE Comercial, S.A.C. and Defendants, CE Comercial, S.A.C. agreed to grow, harvest, and pack asparagus for the 2018–2019 season and appointed Defendants as its exclusive sales agent but Defendants chose to not sell or to delay the sale of some or all of that Product.

73.    Pursuant to the contract between Global Fresh S.A.C. and Defendants, Global Fresh S.A.C. agreed to grow, harvest, and pack asparagus for the 2017–2018 and 2018–2019 seasons and appointed Defendants as its exclusive sales agent but Defendants chose to not sell or to delay the sale of some or all of that Product.

74.    Pursuant to the contract between Pepas Tropicales del Peru, S.A.C. and Defendants, Pepas Tropicales del Peru, S.A.C. agreed to grow, harvest, and pack asparagus for the 2018 and 2019 seasons and appointed Defendants as its

exclusive sales agent but Defendants chose to not sell or to delay the sale of some or all of that Product.

75.     Pursuant to the contract between Phil Sandifer & Sons Farms LLC and Defendants, Phil Sandifer & Sons Farms LLC agreed to grow, harvest, and pack watermelons for the 2018 season and appointed Defendants as its exclusive sales agent but Defendants chose to not sell or to delay the sale of some or all of that Product.

76.     Defendants' dual capacity as an exclusive fiduciary consignment sales agent for each Plaintiff and for other growers of the same Products created an inherent, but undisclosed, conflict of interest.

## VI.     FIRST CAUSE OF ACTION FOR VIOLATION OF PACA.

77.     Plaintiffs re-allege and incorporate by reference the foregoing allegations as though fully set forth in this paragraph.

78.     Under 7 U.S.C. § 499e, entitled *Liability to persons injured*, PACA makes a commission merchant, a dealer, and a broker each liable for violating any provision of 7 U.S.C. § 499b to any person injured for the full amount of damages sustained as a result of the violation.

79.     Under 7 U.S.C. § 499b(4), PACA makes it unlawful for a commission merchant, dealer, or broker to fail to perform any express or implied duty

without reasonable cause arising out of their undertaking with respect to any transaction involving any perishable agricultural commodity.

80.     Each Defendant is a commission merchant, dealer, or broker under PACA.

81.     The Products described in each Plaintiff's written agreement with Defendants is a perishable agricultural commodity.

82.     The written agreements between each Plaintiff and Defendants are transactions involving the purchase or sale in interstate or foreign commerce of perishable agricultural commodities.

83.     Defendants breached their expressed and implied duties under PACA with respect to their failure to market each Plaintiff's Products by:

   83.01.     failing to endeavor to identify a viable market and sell each Plaintiff's Products;

   83.02.     failing to receive and sell Products which each Plaintiff packed and prepared for shipment;

   83.03.     failing to market Products received by Defendant in a timely fashion based on the shelf life of such Products;

   83.04.     failing to accept additional Products which, as a result, were left unharvested and unsold to avoid exacerbating Plaintiffs damages by incurring labor costs to harvest and pack Products which Defendants chose not to sell;

83.05.    rendering each Plaintiff unable to sell the Products which Defendants chose not to sell including, but not limited to, each Plaintiff's inability to sell their Products using other produce marketers;

83.06.    misleading Plaintiffs (or some of them) using false promises of future shipments that never occurred and of reimbursements that Plaintiffs never received; and

83.07.    selling what were originally reported to the Plaintiffs as rejected loads and then neglecting to pay Plaintiffs for those secondary sales.

84.    As a consequence of Defendants' breach of the foregoing expressed and implied duties, each Plaintiff has been injured.

85.    Defendants are liable to each Plaintiff for the full amount of damages sustained.

## VII.    SECOND CAUSE OF ACTION FOR BREACH OF CONTRACT UNDER MINNESOTA STATE LAW.

86.    Plaintiffs re-allege and incorporate by reference the foregoing allegations as though fully set forth in this paragraph.

87.    Defendants' conduct breached Defendants' contract with each Plaintiff.

88.     As a foreseeable consequence of Defendants' breach, each Plaintiff suffered damages.

89.     Defendants' contract with each Plaintiff provides for the recovery of reasonable attorney's fees to the prevailing party.

## VIII.     THIRD CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY UNDER PACA AND MINNESOTA STATE LAW

90.     Plaintiffs re-allege and incorporate by reference the foregoing allegations as though fully set forth in this paragraph.

91.     Each Plaintiff's agreement with Defendants contains multiple references to Defendants as "agent."

92.     Each Plaintiff's agreement with Defendants expressly states that the "Grower hereby appoints [Defendants] as its exclusive sales agent for the sale of all Products."

93.     Each Plaintiff's agreement with Defendants expressly states that Defendants agree to market the Plaintiff's Products "on a consignment basis."

94.     Consignment transactions under PACA are fiduciary transactions in which the consignee (*i.e.*, the Defendants) must exercise a high degree of care to protect the interests of the consignor (*i.e.*, each Plaintiff).

95.     Under the common law of Minnesota, agents such as Defendants are

fiduciaries with respect to the principal which has been described as follows:

> One acting in a fiduciary capacity must exercise the
> utmost fidelity toward the principal, [citation
> omitted] and owes the principal a duty of full
> disclosure [citation omitted]. An agent cannot profit
> from the subject of the agency without the principal's
> consent, freely given after full disclosure of any facts
> that might influence the principal's judgment.

*Carlson v. Carlson*, 363 N.W.2d 803, 805 (Minn. Ct. App. 1985).

96.     "Agency" is defined as "the fiduciary relation which results from the

manifestation of consent by one person to another that the other shall act on his

behalf and subject to his control, and consent by the other so to act." *Urban v. Am.*

*Legion Dep't of Minnesota*, 723 N.W.2d 1, 12 (Minn. 2006) (quoting Restatement

(Second) of Agency § 1(1)).

97.     By executing each agreement Defendants had drafted, the Plaintiff

manifested consent that Defendants act as its exclusive sales agent subject to the

limits expressed in the agreement.

98.     The Restatement (Illustration 1 under § 1) gives an illustration of an

agency which, but for using terms of sale (as opposed to the Agreements'

expressed disclaimer of any sale from a Plaintiff to Defendants), describes

substantially the same facts as here and concludes there is an agency

relationship:

> P and A enter into an agreement which is stated to be
> a "contract of sale." It provides that for one year A
> shall purchase a specified amount of goods from P;
> that the risk of loss of such goods after purchase is
> upon P, if A uses care in their custody; that A is to pay
> for and to sell them at prices to be fixed by P from time
> to time and is to keep the proceeds as a separate
> account, remitting monthly 90 per cent. and keeping
> the remainder for himself; that unsold goods can be
> returned to P; and that P will pay A one-half of A's
> selling expenses. A is P's agent.

99.    The relationship between Defendants and each Plaintiff was that of

agent and principal because, among other facts:

99.01.    Each agreement expressly provides that the Plaintiff appoints
Defendants as the Plaintiff's exclusive sales agent.

99.02.    Each agreement expressly provides that Defendants have not
purchased the Products "but is selling the Products on Grower's
behalf to third party customers."

99.03.    Each agreement, having been drafted by Defendants, state
that both title to and the risk of loss of the Products are retained by
the Plaintiff until the Customer accepts them.

99.04.    There is no agreement on the Products' sales price between
Defendants and each Plaintiff; instead, Defendants agree that, after
entering into the agreement, Defendants will negotiate a final sales

price—endeavoring to obtain the best price for the Plaintiff—with the ultimate buyer and to charge a commission based on that price with the remaining amount to be remitted to the Plaintiff.

99.05.    Defendants are required to report to each Plaintiff the final sales prices upon which its commissions were determined and paid.

99.06.    Each Plaintiff retained a limited right to demand inspections of Products for which customers had a complaint regarding quality or condition at delivery.

99.07.    The Products consigned to Defendants were delivered in a complete form. Defendants were not required to make any alteration.

99.08.    Each Plaintiff retained the right to terminate the agreement and, in some cases, the agreement was subject to an annual right of either party to terminate it.

99.09.    If a customer rejected any load of the Plaintiff's Products, each Plaintiff retained the right to retake possession of its Products.

100.    Under Minnesota common law, Defendants' agency relationship with each Plaintiff made Defendants "a fiduciary with respect to matters within the scope of his agency." Restatement (Second) of Agency § 13.

101.    Incident to the Parties' principal-agent relationship are Defendants' fiduciary duties to each Plaintiff including Defendants' duty of loyalty to place each Plaintiff's interests above Defendants' interests with respect to matters

within the scope of the agency including, but not limited to, the sale of each

Plaintiff's Products.

102.   By choosing not to sell or to delay the sale of each Plaintiff's

Products, Defendants placed their own interests ahead of each Plaintiff's

interests because Defendants could have chosen to make a timely sale of each

Plaintiff's Products.

103.   At or about the same time that the Plaintiff's Products could have

been sold, Defendants' records reflect that Defendants accepted the same

Products from other growers and, therefore, could have sold the Plaintiffs'

Products but, to advance Defendants' own interests, Defendants chose not to sell

Plaintiff's Products.

104.    In addition, Defendants delayed the sale of some of the Plaintiff's

Products resulting in quality degradation and rejection by Defendants' customer

who had agreed to purchase those Products which Defendants resold to

secondary vendors without informing Plaintiffs or paying them the net proceeds

when it was in Plaintiffs' interest to sell Plaintiffs' more viable Products before

they decomposed in Plaintiffs' warehouses and fields.

105.   As a direct, legal, foreseeable, and proximate cause of Defendants'

conduct, each Plaintiff suffered damages.

## IX.   FOURTH CAUSE OF ACTION FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING UNDER MINNESOTA STATE LAW.

106.   Plaintiffs re-allege and incorporate by reference the foregoing allegations as though fully set forth in this paragraph.

107.   Under Minnesota law, every contract includes an implied covenant of good faith and fair dealing.

108.   Defendants' conduct violated the implied covenant of good faith and fair dealing with respect to their contracts with each Plaintiff.

109.   Defendants' conduct which breached its implied duty of good faith and fair dealing include, but are not limited to:

109.01.   Failing to inform each Plaintiff that Defendants would not be selling or would delay selling of each Plaintiff's Products after contracting with each Plaintiff to grow, harvest, and pack specific quantities of each Product.

109.02.   Failing to timely waive Defendants' exclusivity rights when Defendants chose not to undertake their contractual obligations to market or sell Plaintiff's Products and, by not doing so, Defendants (i) deprived Plaintiffs of any meaningful opportunity to mitigate damages and (ii) allowed Defendants to artificially support the market for Defendants' other growers by reducing the supply of the Products.

109.03.   Entering into contracts with other growers of the same
Products after binding each Plaintiff agreed to grow, harvest, and
pack the Products in quantities exceeding Defendants' capacity to
sell or distribute.

109.04.   Failing to inform each Plaintiff that Defendants had
contracted with other growers to grow quantities of the same
Products which, together with the contractually specified quantities
to be grown by each Plaintiff, would exceed Defendants' capacity to
sell or distribute.

109.05.   Failing to inform each Plaintiff that, by contracting with other
growers to grow quantities of the same Products, Defendants would
be unable to market, sell, or distribute all Products under
Defendants' contracts with growers.

110.   As a direct, legal, foreseeable, and proximate cause of Defendants'
conduct, each Plaintiff suffered damages.

## X.   PRAYER FOR RELIEF.

111.   WHEREFORE, each Plaintiff respectfully request the Court enter
judgment in its favor and against Defendants, C.H. Robinson Worldwide, Inc.,
C.H. Robinson Company, Inc., C.H. Robinson Company, jointly and severally,
for damages, reasonable attorney's fees, interest, costs, and such other relief as is
just and equitable.

## XI.   JURY DEMAND.

112.   Demand is hereby made for trial by jury.

Respectfully submitted,

Dated: May 1, 2020

_s/Craig A. Stokes_

Craig A. Stokes (MN Bar No. 0390849)
STOKES LAW OFFICE LLP
3330 Oakwell Court, Suite 225
San Antonio, TX 78218
Telephone: (210) 804-0011
Email: cstokes@stokeslawofffice.com

Philip D. Stern (NJ Bar No. 045921984)
Andrew T. Thomasson (NJ Bar No. 048362011)
Francis R. Greene (IL Bar No. 6272313)
STERN•THOMASSON LLP
150 Morris Avenue, 2nd Floor
Springfield, NJ 07081-1315
Telephone: (973) 379-7500
E-Mail: Philip@SternThomasson.com
E-Mail: Andrew@SternThomasson.com

Robert A. Pollom (TX Bar No. 24041703)
KETTERMAN ROWLAND & WESTLUND
16500 San Pedro Avenue, 3rd Floor
San Antonio, TX 78232
Telephone: (210) 490-4357
E-Mail: Robert@krwlawyers.com

_Attorneys for Plaintiffs_