**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| DAVID MOORE d/b/a MOORE FAMILY FARMS, *et al.*, | Case No. 4:20-cv-00252-PJS-HB |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM OF LAW RESPONDING TO DEFENDANTS' MOTIONS TO CONSOLIDATE AND TO DISMISS** |
| *vs.* | |
| C.H. ROBINSON WORLDWIDE, INC.; *et al.*, | |
| Defendants. | **Submitted to Special Master** |

By this Memorandum, Plaintiffs respond to Defendants' Motions filed here and in *Lusk, et al. v. C.H. Robinson Worldwide, et al.,* Case 0:20-cv-00879-PJS-HB. Specifically, this Memorandum responds to Defendants' Consolidation Motions [Docs. 97–102 in *Moore*; Doc. 21 in *Lusk*], and Defendants' Motions to Dismiss [Docs. 103–109 in *Moore*; Docs. 22–28 in *Lusk*].

## I.   EFFICIENCY IS THE OBJECTIVE.

The key which unlocks the door to the consolidation room is the presence of a common issue of fact or law between two cases. But the mere fact that the door is unlocked is not a reason for going in. Before entering, a decision must be made that doing so will avoid unnecessary costs or delays in the two cases. When choosing to enter, the Court can decide to furnish and decorate the room. Moreover, once inside, the Court can redecorate at any time to advance the

underlying reason for consolidation: efficiency in the management and adjudication of the cases.

Defendants' Motions repeatedly harp on what is common about these cases but we have yet to have a complete picture of the issues because Defendants have refused to file their responsive pleadings before the Court has to decide whether consolidation is appropriate. In recent conferences with the Special Master, Defendants contend that Plaintiffs know Defendants' issues based on their Answers filed to prior complaints. First, Defendants have never filed an answer to the claims alleged by 12 of the 14 Plaintiffs in *Moore* and *Lusk*.[1]

There has never been any dispute that there exists a common issue of fact or law between *Moore* and *Lusk*. The concern is not whether the cases *can be* consolidated; the issue is whether they *should be*. Defendants fall short in explaining what efficiencies can be realized from consolidation. As will discuss below, Defendants' real goal is not consolidation, but merger. Although their Memorandum fails to discuss it, Defendants' proposed order reflects the real relief Defendants seek: a single complaint so that the identities of these two cases

---

[1] Of the 12 Plaintiffs in *Moore*, Defendants have only answered complaints with respect to Townsend and Flowers. Defendants have never answered any complaint filed by Lusk or JMB, the Plaintiffs in *Lusk*.

will disappear like what happened with the *Townsend*, *Flowers*, *Sanway*,

*Wainwright*, *SK Enterprises*, *Shore Sweet*, *Melon Acres*, *Glory*, and *Bonne Idee* cases.

## II.   DEFENDANTS NEVER EXPLAINED WHAT EFFICIENCIES WOULD BE REALIZED BY GRANTING THE REQUESTED RELIEF.

In their 5,519-word, 21-page Memorandum [Doc. 99], Defendants devote

just three paragraphs to discussing efficiencies, but they never describe any

actual efficiency.

The first item Defendants mention is their "manner of obtaining freight

services to transport watermelons," which they say "will be relevant to both

cases." [Doc. 99 at 13.] That information is obviously relevant to the Disclosure

claims in which Defendants retained from the sales proceeds an amount in excess

of what they paid for freight. The Marketing claims involve Defendants' failure

to sell produce and, therefore, there were no freight charges. Thus, obtaining

freight services has nothing to do with the Marketing claims and Defendants

have not provided any explanation to the contrary.

Next, Defendants speculate that: there might be Rule 30(b)(6) witnesses

who can be deposed on issues relevant to both cases; their reps assigned to each

Plaintiff might have knowledge of facts as to both claims; and one of their

records custodians might have records relevant to both cases.

Why the need for speculation? Based on the litigation history leading up to the two pending cases, it is difficult to accept that Defendants don't already know who their Rule 30(b)(6) witnesses will be on the issues alleged in the two operative Complaints. It is equally unfathomable that Defendants are still clueless as to their field reps for each Plaintiff and whether any rep has personal knowledge relevant to both cases. Please recall that no Plaintiff is a party to both cases. Thus, unless a field rep is assigned to both a grower in *Moore* and a grower in *Lusk*, it is hard to understand why that rep would have knowledge relevant to both cases. Defendants undoubtedly know who the rep is/was for each Plaintiff in each case and, therefore, could have identified any witness with knowledge relevant to both claims.

Defendants' postulating about custodians is another example of pure speculation. It might be that a custodian exists with records relevant to both cases and, if so, it would be efficient to schedule that custodian's deposition at the same time for both cases. But, why do Defendants require us to speculate when they must know the answer? On March 27, 2020, Judge Bowbeer entered the Second Order on ESI Protocol [*Townsend* Doc. 172] which ordered Defendants' "in-house information management or information systems expert

who is knowledgeable about Defendants' database systems must either

participate directly in the telephone conference [to be held within two weeks] or

must be available continuously throughout the conference as needed." To

comply with that Order, Defendants must know whether there is a custodian of

records relevant to both cases.

Defendants argue that discovery disputes can be resolved by the

Discovery Master if the cases are consolidated. The common issues in these cases

concern the relationship between the Defendants and each Plaintiff. On the

Marketing claims which are asserted individually by each *Moore* Plaintiff, it does

not matter that there may be differences between one Plaintiff's contract and

another's contract because each Plaintiff's claim is based on its own contract with

Defendants. If the contracts are materially the same, then the Court might be able

to interpret those terms as applied to all the *Moore* Plaintiffs instead of each one

separately. But, if the contracts with the *Moore* Plaintiffs are materially different,

each Plaintiff will proceed based on its contract regardless whether it is unique or

common.

In contrast with the Plaintiffs' contracts in *Moore*, the class claims in *Lusk*

depend on uniformity of the terms which are material to the Disclosure claims.

Thus, it is possible there could be discovery disputes over obtaining parol evidence interpreting identical contract terms in both cases, but Defendants have certainly not articulated any. That possibility does not justify Defendants' request for consolidation for all purposes coupled with merging all claims into a single complaint.

There seems little likelihood that resolving discovery disputes relevant to these cases' divergent core issues. Issues concerning freight toppings in *Lusk* when Defendants sold a grower's produce do not appear to bear any connection to a discovery dispute over rotting produce when Defendants didn't sell it (but sold a competitor's produce).

Defendants' Motions fail to present anything more than speculation about whether there are efficiencies from consolidation for all purposes coupled with merging the claims into a single complaint. This is particularly disconcerting when the facts about relevant evidence and witnesses are at Defendants fingertips. Further, Defendants continue to resist filing their answers despite informally contending that the answers will be consistent with the answers they filed to prior complaints which, if so, would make filing their answers now an easy task to complete.

### III.   HAVING NOT PRESENTED AN ADEQUATE FOUNDATION FOR CONSOLIDATION, DEFENDANTS SEEK TO BIND ALL PLAINTIFFS TO A POSITION ONLY SOME OF THEM TOOK UNDER MATERIALLY DIFFERENCE CIRCUMSTANCES.

Having not made a real showing of any efficiencies from granting the relief they request, Defendants repeatedly pounce on the fact that, at another time and under materially different circumstances, Plaintiffs' counsel sought to have all Plaintiffs and all claims in a single case. That was then, and this is now.

During 2019, as growers retained Craig A. Stokes, he filed their individual complaints. By the fall, it made sense to consolidate those individual cases. Based on conversations with Defendants' counsel, Mr. Stokes understood Defendants' desire to "wrap up" all its liabilities on these claims. Thus, following a joint motion to consolidate with leave to file a unified complaint, counsel filed the Consolidated Class Action Complaint (CCAC) in *Townsend*. In addition to the 12 growers who had filed complaints, the CCAC added 5 new Plaintiffs.

Attached as ***Exhibit 1*** is a chart listing the growers who have been parties to *Townsend, Moore,* and *Lusk.* The chart lists each grower in the chronological order in which they became a party.

The chart begins with Townsend who commenced its action in December 2018. *Townsend* was initially filed asserting only its Marketing claims but was subsequently amended to add Disclosure claims.

Flowers is next, followed by Sanway, Wainwright, SK Enterprises, Shore Sweet, BG Catlin, WL Farms, Melon Acres, Hoosier, Glory, and Bonne Idee. Those individual's cases were consolidated with *Townsend* and the claims merged into a Consolidated Complaint in December 2019.

In November 2019, the subsequently stricken class action complaint was filed in *Townsend*. In addition to the above-mentioned growers, the CCAC added Moore, Rentz, MEK, Bowles, and Lusk.

Based on Defendants' objection, the CCAC was stricken and, per Judge Bowbeer's order, the 12 pre-existing Plaintiffs could file non-class claims in a Consolidated Complaint. Of those 12, only 2—Townsend and Flowers—also had Marketing claims. The other 10 only asserted Disclosure claims and only on an individual basis.

A month later, with still more growers retaining Mr. Stokes, the 5 growers bounced from *Townsend* when the CCAC was stricken, along with 7 new ones (Agropecario, Sandifer, Global, Pepas, Powe, CE Comercial, and JMB)

commenced *Moore* as a class action. Of those 12 *Moore* Plaintiffs, all but 2—Lusk and JMB—also alleged individual Marketing claims.

Thus, at the time *Moore* was commenced, each case had 12 Plaintiffs. Of them, 2 of the 12 in *Townsend* alleged Marketing claims in addition to the Disclosure claims which all of them alleged; but only 2 of the 12 in *Moore* had only Disclosure claims while the other 10 also asserted Marketing claims.

With both cases having a mix of Plaintiffs who only had Disclosure claims and others who also asserted Marketing claims, the key difference between the cases was the class claims in *Moore*. While there is nothing which absolutely bars a class representative from asserting both class claims and individual claims, there is a potential for problems. Further, while there is also no absolute bar from an attorney representing putative class representatives and seeking to be class counsel while representing a separate client pursuing its own class claim on an individual basis (such as the *Townsend* Plaintiffs), there are potential problems.

In response to the *Moore* Complaint, Defendants' counsel sent a letter on March 13, 2020. Counsel posited, "It is not difficult to imagine a scenario where the *Townsend* Plaintiffs demand their counsel take a position […] that is inconsistent with the position of the *Moore* Plaintiffs and putative class."

Furthermore, "Plaintiffs' counsel may refuse to take actions that are in the interest of the *Townsend* Plaintiffs if such actions harm the *Moore* Plaintiffs and putative *Moore* class." That, according to Defendants' counsel, would create an "unavoidable conflict" and preclude them from representing the class.

Plaintiffs' counsel saw that March 13 letter as a 'shot across the bow.' Defendants counsel could be expected to do everything possible to make certain that an actual conflict would arise. Notwithstanding the procedural settings which led *Townsend* and *Moore* to be where they were, Plaintiffs' counsel decided to minimize the opportunity for Defendants' counsel to manufacture a conflict through either discovery or settlement offers. Hence, all Plaintiffs with individual Marketing claims would only pursue their Marketing claims on an individual bases; they would be absent class members with respect to their Disclosure claims. The Plaintiffs with only Disclosure claims would pursue those claims in a separate action on a class basis.

Procedurally, Plaintiffs did what they could as a matter of right. Lusk and JMB, who only have Disclosure claims, voluntarily dismissed their claims in *Moore* and commenced *Lusk* as a class action. The remaining *Moore* Plaintiffs then dropped their Disclosure claims leaving them with only their Marketing claims.

In *Townsend*, the 10 Plaintiffs with only Disclosure claims needed leave to voluntarily dismiss their claims. Those 10 could remain as absent class members but they desire to join Lusk and JMB in *Lusk* as putative class representatives. The remaining 2 *Townsend* Plaintiffs would remain but dismiss their Disclosure claims and, like those who dropped that claim in *Moore*, they would be absent class members.

Finally, once *Townsend* and *Moore* only had Plaintiffs who were only alleging Marketing claims, those two cases could be consolidated.

The proposed changes in *Townsend* required leave of Court which was granted by consolidating *Townsend* into *Moore* and merging the cases into a Second Amended Consolidated Complaint.

At the time Plaintiffs' counsel advocated for consolidation, Defendants had just thwarted their efforts to have all claims in one case requiring them to file a separate class action. With the mix of Marketing and Disclosure claims in both cases, it initially seemed like a good idea to consolidate. On further reflection, by objecting, Defendants had insisted on there being two cases and it did not seem fair to make the consolidated *Townsend* Plaintiffs have to wait while the *Moore* class action caught up. Subsequently, the reflection triggered by Defendants'

March 13 letter leading to the segregation of Plaintiffs and claims changed the landscape. Whatever may have been the reasons for a unified case in November no longer persisted.

If there ever was one, there is no longer any basis for Defendants' insistence that any Plaintiff should be bound by the position previously taken under materially different circumstances.

For two reasons, it takes chutzpah[2] for Defendants to argue Plaintiffs should be bound by an abandoned, unsuccessful position taken under different circumstances. When the then-existing Parties jointly moved to consolidate what was nine separate actions with a total of 12 Plaintiffs and the Court granted leave to amend in *Townsend,* a Consolidated Class Action Complaint (CCAC) was filed adding class claims and 5 new Plaintiffs. Defendants objected and the Court struck the CCAC. The Court's Order, Doc. 111 in *Townsend*, is clear on its face: Plaintiffs filed the CCAC, Defendants filed an objection, and the CCAC was "**STRICKEN**." For convenience, a copy of the Order is attached as *Exhibit 2*. Defendants won! Therefore, Defendants—not Plaintiffs—are *judicially estopped*

---

[2] Many courts have used this Yiddish term which has been described as the attitude a criminal defendant takes when making a serious plea for mercy as an orphan upon being found guilty of killing his parents.

from taking a contrary position. A party who prevails by taking a position is judicially estopped from taking a contrary position later in the same or another litigation. *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 413 F.3d 897, 905 (8th Cir. 2005).

Despite being judicially estopped, Defendants unconditionally assert, "CHR has remained *consistent* on the issue of consolidation." [*Moore* Doc. 99 a p.12 (emphasis added).] Had Defendants been consistent, they would not have objected to the CCAC and it would not have been stricken. Just eight pages earlier in their Memorandum [Doc. 99], Defendants confirmed that "CHR initially objected to the filing of" the CCAC. Apparently, Defendants are so comfortable with their excuse for having taken a contrary position, they treat it like it never happened. Yet, they are incapable of understanding how changed circumstances explain Plaintiffs' position. And, even if, the Plaintiffs existing in November 2019 were bound by their counsel's position, there is no basis for binding the Plaintiffs who were not yet parties to any litigation. They are Plaintiffs Agropecario, Sandifer, Global, Pepas, Powe, and CE Comercial. *See, Exhibit 1.*

## IV.   THERE IS NO CLAIM SPLITTING.

Defendants' claim splitting arguments are easily resolved because claim splitting only applies where a plaintiff asserts claims in two different actions. "The claim splitting doctrine [is] premised on the notion that the **same** parties are addressing the same controversy in more than one lawsuit." *George v. Uponor Corp.*, 988 F. Supp. 2d 1056, 1077 (D. Minn. 2013) (emphasis added). Furthermore, its purpose is "to promote judicial economy and avoid conflicting rulings" when there are "duplicative lawsuits." *George v. Uponor Corp.*, 988 F. Supp. 2d 1056, 1078 (D. Minn. 2013). Finally, it is a discretionary rule to be used to avoid duplicity of litigation. *In re RFC & ResCap Liquidating Tr. Litig.*, No. 13-CV-3451(SRN/HB), 2017 WL 3129748, at *6 (D. Minn. July 21, 2017).

There is no Plaintiff who is asserting claims in multiple lawsuits. Moreover, *Lusk* and *Moore* are not duplicative; they involve separate claims. Hence, claim splitting is facially inapplicable.

In *Woodards v. Chipotle Mexican Grill, Inc.*, No. 14-CV-4181 SRN/SER, 2015 WL 3447438 (D. Minn. May 28, 2015), the court held that claim splitting did not apply because Woodards was not a party to the other action. Both actions were class actions by employees of the Chipotle restaurant chain asserting the same fair labor standards claims. Other than the specifics identifying each plaintiff and

what store the plaintiff had been employed, the complaints were identical. In addition, the plaintiffs in both cases were represented by the same attorney. The court denied Chipotle's Rule 12(b)(6) motion because claim-splitting can only apply when the plaintiff is the same person in both cases and Woodards was only a party to one lawsuit.

Claim splitting, a hybrid of *res judicata* applied when there are two cases when neither has yet resulted in an adjudication. Principles of *res judicata* apply, except the requirement of a final judgment. *RFC & ResCap Liquidating*. Thus, claim splitting does not apply except when *res judicata* would apply to preclude claims in one lawsuit if there had been a prior judgment in the other.

"[A] claim is barred by res judicata if it arises out of the same nucleus of operative facts as the prior claim." *Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir. 1990). The Disclosure claims and the Marketing claims do not arise out of "the same nucleus of operative facts."

If a judgment were entered in *Lusk*, it would not preclude the *Moore* Plaintiffs from recovering on Marketing claims. First, the contracts were for annual periods. Thus, any freight topping claim arising in a year other than the year in which the Marketing claims arose do not arise out of the same contract.

Second, the claims do arise from the same transactions. The Disclosure claims arise out of transactions for the sale of a grower's produce. The Marketing claims do not arise out of any transaction for the sale of any produce. Third, a judgment in *Lusk* concerning the Class is limited to the claims or issues defined when the Court grants class certification. FED. R. CIV. P. 23(c)(1)(B). Absent class members cannot assert claims against the defendant. Therefore, a judgment in *Lusk* cannot have a preclusive effect on any class member's claims other than the defined class claim.

If a judgment were entered in *Moore*, it could only preclude the *Moore* Plaintiffs' participation as absent class members if their Disclosure claims arise from the same nucleus of operative facts as their Marketing claims. As explained in the preceding paragraph, the Disclosure claims do not arise out of the transactions from which the Disclosure claims arose.

The fact that all claims in both cases exist because of the relationship between growers and Defendants is not the operative fact which give rise to the claims. The operative facts for the Disclosure claims arise from conduct related to an actual sale of produce. The operative facts for the Marketing claims arise from

the lack of any sale. Thus, *res judicata* could never bar the claims in either *Lusk* or

*Moore* upon a judgment in one of them.

For these reasons, there is no claim splitting. Defendants' Motions to

Dismiss based on claim splitting should be denied. Furthermore, the rule against

claim splitting does not support consolidation.

## V.    ONE-WAY INTERVENTION AND COLLATERAL ESTOPPEL

One of Defendants' "primary concerns" is the potential for one-way

intervention in *Lusk* from a decision on the merits in *Moore* before a *Lusk* class

member must decide whether to opt-out. [Doc. 99 at 17.]

The Eighth Circuit provided this explanation of the one-intervention rule:

> The prejudice inherent in delaying the certification
> determination until after trial has been thoroughly
> explored in the context of litigation under
> subdivision (3) of Rule 23(b). The courts' concern
> in Rule 23(b)(3) suits has been to prevent "one-
> way intervention;" i.e., to protect defendants from
> putative class members who can "opt-out" of an
> unfavorable decision rendered simultaneously
> with class certification but can choose to be bound
> by a favorable decision.

*Paxton v. Union Nat. Bank*, 688 F.2d 552, 558 (8th Cir. 1982).

Observe that Defendants have not identified any claim or issue in *Moore*

which could constitute an unfavorable decision on any claim or issue in *Lusk*. It is

true that, if an issue were litigated and resolved in *Moore* which is identical to an issue in *Lusk*, Plaintiffs would likely seek to use offensive collateral estoppel if there is no justification for Defendants wasting the Court's time relitigating the same issue. Defendants' foolishly suggest they won't do as good a job litigating issues in *Moore* as they would in *Lusk* where "the stakes are arguably higher." [Doc. 99 at 17.] Indeed, knowing that they might not be able to relitigate the same issue multiple times should be incentive enough. Nevertheless, a party's interest in fully litigating an issue is a factor to be considered whether to bar that party from relitigating it. If that were to happen, Defendants can explain why they only half-heartedly litigated the issue in *Moore*.

At this early stage, however, it is too soon to know when there will be a merits determination in either case and, if so, whether one will be made in *Moore* before the opt-out deadline in *Lusk*. If *Moore* were ready for adjudication well enough in advance of the *Lusk* opt out deadline, Defendants can seek to delay the adjudication or limit its collateral estoppel effect. Either way, the potential for *Moore* to resolve an issue for which Defendants would be collaterally estopped in *Lusk* is not a justification for consolidation. Indeed, if consolidation serves as the basis to delay the *Moore* Plaintiffs from having their claims resolved, then

consolidation only serves to prejudice them and that is a reason to deny consolidation. For the same reason, Defendants vow to vigorously litigate class certification raises the prospect of additional delays and prejudice to the *Moore* Plaintiffs.

Furthermore, as Defendants observed in their Memorandum, at 18, the Supreme Court has explained that, where offensive use of collateral estoppel would be unfair to Defendants, a trial judge should not allow its use. Thus, as the case proceeds and issues ripen to be ready for an adjudication on the merits, Defendants can, at that time, seek to delay an adjudication or to limit the use of any adjudication. But consolidation is not the process by which to protect whatever legitimate concerns Defendants may have.

## VI.   THE REASONS FOR CONSOLIDATING THESE CASES CAN BE ADDRESSED IN AN APPROPRIATE ORDER.

Aside from the foregoing deficiencies in Defendants' Motions, Plaintiffs have concerns with Defendants' proposal which would effectively merge the two cases.

First, *Moore* should proceed to disposition when it is ready. Consolidation should not be a means to delay disposition. Any concerns Defendants may have

about *Moore*'s disposition prior to *Lusk* are not addressed by consolidation. Instead, they can be raised and addressed when those issues become ripe.

Second, cognizant of the pragmatic reasons for consolidation, Plaintiffs objective in consolidating the two cases is to be a tool which facilitates the goal of completing fact discovery by the end of the year. To that end, the Special Master can be relieved of having to prepare two orders after each conference. One order covering issues in both cases will suffice. In addition, the Parties can be relieved of duplicate filings and avoid an unnecessary waste of time and expense.

Third, there is no pressing need to resolve right now matters which must await the completion of discovery. Decisions on post-discovery matters including dispositive motions and how these cases will be tried should be held off.

Fourth, Plaintiffs' counsel takes very seriously Defendants assertions of ethical and conflicts issues. Consolidation should not be a vehicle by which Defendants can seek to disqualify Plaintiffs' counsel or manufacture issues as to the adequacy of the *Lusk* Plaintiffs as class representatives. Therefore, Plaintiffs request that any consolidation order be tailored to avoid giving Defendants such an opportunity.

For these reasons, Plaintiffs ask the Court to consider the proposed Order attached as *Exhibit 3* to this Memorandum.

## VII.    CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request the Court consolidated these actions for the immediate purpose of completing fact discovery in both cases in an expeditious manner and to facilitate the purposes underlying the appointment of the Special Master. Furthermore, Plaintiffs request the denial of Defendants' separate motions to dismiss *Moore* and *Lusk.*

Respectfully submitted,

Dated: June 19, 2020                         /s/ *Craig A. Stokes*

Craig A. Stokes (MN Attorney ID # 0390849)
STOKES LAW OFFICE LLP
3330 Oakwell Court, Suite 225
San Antonio, TX 78218
Telephone: (210) 804-0011
Email: cstokes@stokeslawofffice.com

Philip D. Stern (NJ Attorney ID # 045921984)
Andrew T. Thomasson (NJ Attorney ID # 048362011)
Francis R. Greene (IL Attorney ID # 6272313)
STERN•THOMASSON LLP
150 Morris Avenue, 2nd Floor
Springfield, NJ 07081-1315
Telephone: (973) 379-7500
E-Mail: Philip@SternThomasson.com
E-Mail: Andrew@SternThomasson.com

Robert A. Pollom

KETTERMAN ROWLAND & WESTLUND
16500 San Pedro Avenue, 3rd Floor
San Antonio, TX 78232
Telephone: (210) 490-4357
E-Mail: Robert@krwlawyers.com

*Attorneys for Plaintiffs*