UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

DAVID MOORE d/b/a MOORE FAMILY
FARMS, *et al.*,

                    Plaintiffs,

          v.                                              Case No.: 20-cv-252 (PJS/HB)
                                                                    Rule 53 Master
C.H. ROBINSON WORLDWIDE, INC. *et
al.*,

                    Defendants.

---

TERRY LUSK, JASON LUSK, and
JUSTIN LUSK, individually and d/b/a JTJ
FARMS, *et al.*,

                    Plaintiffs,

          v.                                              Case No.: 20-cv-879 (PJS/HB)
                                                                    Rule 53 Master

C.H. ROBINSON WORLDWIDE, INC. *et
al.*,

                    Defendants.

---

## Report and Recommendation

On May 15, 2020, the undersigned was appointed a Rule 53 master in the above
cases, namely in *Terry Lusk, et al. v. C.H. Robinson Worldwide, Inc. et al.* ("*Lusk*"), and
in *David Moore et al v. C.H. Robinson Worldwide, Inc. et al.* ("*Moore*").  The Defendants'
have moved (a) to dismiss the complaints in *Lusk* and *Moore,* (b) to strike and dismiss
class allegations in *Lusk*, and (c) to consolidate *Lusk* and *Moore*.  On June 24, 2020, a
hearing was held via Zoom teleconference. Representing Plaintiffs in both *Lusk* and
*Moore* were Philip Stern, Craig Stokes, Andrew Thomasson and Robert Pollom, and
representing Defendants in both *Lusk* and *Moore* were Peter Wozniak, Adina Florea,

Patrick Rooney, Mark Wallin and Bradley Hutter.  On the submissions and argument of the parties, and the files and proceedings herein, the undersigned makes the following Report and Recommendation to the above United States District Judge Patrick Schlitz, who presides over both of the above cases:

1.  To deny Defendants' motions to dismiss and to strike;

2.  To grant Defendants' motion to consolidate *Lusk* and *Moore*, pursuant to a consolidation order in the form of Exhibit A providing:

    a.  Except with respect to class certification and related class matters in *Lusk, Lusk* and *Moore* are hereby consolidated for all pretrial purposes, including: pre-trial conferences and orders; scheduling and scheduling orders; pleading amendments; party joinders; meeting and conferring; discovery responses, disputes and rulings; pretrial sanctions; pretrial dispositive motions and rulings; and all other pre-trial matters, except as otherwise ordered by the above Court;

    b.  So long as Plaintiffs in *Lusk* and in *Moore* are represented by one or more common counsel in both cases (i) at the time of a discovery answer or response, (ii) at the time of production of documents or (iii) at the time of deposition testimony, all such discovery answers and responses, documents and deposition testimony in these consolidated cases may be used, as relevant and as otherwise provided by the Federal Rules of Evidence and/or the Federal Rules of Civil Procedure, by the parties in either case for any purpose. Notwithstanding the  provisions of this paragraph b, such use is fully subject to other *in limine* or trial restrictions or determinations made *de novo* by the above Court;

    c.  So long as Plaintiffs in *Lusk* and *Moore* are represented by one or more common counsel in both cases at the time of any fully submitted dispositive motions, the resulting ruling shall be, as applicable, the law of the case and binding on the parties of both *Lusk* and *Moore.* Notwithstanding the  provisions of this paragraph c, such provisions are fully subject to other limitations or determinations made *de novo* by the above Court;

d.   This Consolidation Order does not consolidate *Lusk* and *Moore* for purposes of trial, for *in limine* pre-trial proceedings or for trial rulings, but this Order is without prejudice to any party, after the finality of any class certification process in *Lusk*, moving for such consolidation, which motion shall be determined *de novo* by the above Court;

e.   *Lusk* and *Moore* are not hereby merged into one case, and except as provided here or by further order of the above Court, each of *Lusk* and *Moore* shall retain their individual case identities, with the parties in each cases retaining all such parties' separate rights including settlement conferences and positions, class issues, client privileges, procedural and substantive rights in the prosecution or defense of the claims in each such case, and in each such case all their separate trial, post-trial and appellate related rights provided by law, by applicable Rules of Civil Procedure and related law, by applicable Rules of Appellate Procedure and related law, and by applicable Rules of Evidence and related law.

f.   Until the above Court orders otherwise, all motions, submissions and other documents to be filed with the Court shall have a caption stating both the caption and case number of each of *Moore* (appearing first) and *Lusk* (appearing next) as shown above, and shall be filed in the dockets of both cases.

3.   The memorandum attached hereto is a part of this Report and Recommendation.

Dated this 9th day of July, 2020

*Richard B. Solum*

Rule 53 Master

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

DAVID MOORE d/b/a MOORE FAMILY
FARMS, *et al.*,

                    Plaintiffs,

          v.                                    Case No.: 20-cv-252 (PJS/HB)
                                                     Rule 53 Master

C.H. ROBINSON WORLDWIDE, INC. *et al.*,

                    Defendants.

---

TERRY LUSK, JASON LUSK, and
JUSTIN LUSK, individually and d/b/a JTJ
FARMS, *et al.*,

                    Plaintiffs,                 Case No.: 20-cv-879 (PJS/HB)
                                                     Rule 53 Master
          v.

C.H. ROBINSON WORLDWIDE, INC. *et al.*,

                    Defendants.

---

**Order for Consolidation**

On the Report and Recommendation of this Court's Rule 53 Master dated July 9, 2020, the above cases *Terry Lusk, et al. v. C.H. Robinson Worldwide, Inc. et al.* ("*Lusk*"), and *David Moore et al v. C.H. Robinson Worldwide, Inc. et al.* ("*Moore*"), are hereby consolidated as follows:

1. Except with respect to class certification and related class matters in *Lusk*, *Lusk* and *Moore* are hereby consolidated for all pretrial purposes, including: pre-trial conferences and orders; scheduling and scheduling

4

orders; pleading amendments; party joinders; meeting and conferring; discovery responses, disputes and rulings; pretrial sanctions; pretrial dispositive motions and rulings; and all other pre-trial matters, except as otherwise ordered by the undersigned;

2. So long as Plaintiffs in *Lusk* and in *Moore* are represented by one or more common counsel in both cases (i) at the time of a discovery answer or response, (ii) at the time of production of documents or (iii) at the time of deposition testimony, all such discovery answers and responses, documents and deposition testimony in these consolidated cases may be used, as relevant and as otherwise provided by the Federal Rules of Evidence and Federal Rules of Civil Procedure, by the parties in either case for any purpose. Notwithstanding the provisions of this paragraph 2, such provisions are fully subject to other *in limine* or trial restrictions or determinations made *de novo* by the undersigned;

3. So long as Plaintiffs in *Lusk* and *Moore* are represented by one or more common counsel in both cases at the time of any fully submitted dispositive motions, the resulting ruling shall be, as applicable, the law of the case and binding on the parties of both *Lusk* and *Moore.* Notwithstanding the provisions of this paragraph 3, such provisions are fully subject to other limitations or determinations made *de novo* by the undersigned;

4. This Consolidation Order does not consolidate *Lusk* and *Moore* for purposes of trial, for *in limine* pre-trial proceedings or for trial rulings, but this Order is without prejudice to any party, after the finality of any class certification process in *Lusk,* moving for such consolidation, which motion shall be determined *de novo* by the undersigned;

5. *Lusk* and *Moore* are not hereby merged into one case, and except as provided here or by further order of the undersigned, each of *Lusk* and *Moore* shall retain their individual case identities, with the parties in each cases retaining all such parties' separate rights including settlement conferences and positions, class issues, client privileges, procedural and substantive rights in the prosecution or defense of the claims in each such case, and in each such case all their separate trial,

post-trial and appellate related rights provided by law, by applicable Rules of Civil Procedure and related law, by applicable Rules of Appellate Procedure and related law, and by applicable Rules of Evidence and related law.

6. Until the undersigned orders otherwise, all motions, submissions and other documents to be filed with the Court shall have a caption stating both the caption and case number of each of *Moore* (appearing first) and *Lusk* (appearing next) as shown above, and shall be filed in the dockets of both cases.

Dated this ___ day of July, 2020

_____
Patrick J. Schlitz
United States District Court Judge

# MEMORANDUM

## I.   MOORE AND LUSK:  DESCRIPTION OF CASES

**A.   Introduction:**   The claim-splitting and consolidation motions implicate a discussion as to the similarity or differences between the *Moore* and *Lusk* cases, as well as a discussion of the difference between the claimed legal duties or rights of each case, compared to the operative facts and evidence of each case.  Here, both cases involve contractual relationships between Plaintiffs who [which] are growers of produce, and Defendants which are engaged in the business of marketing and providing freight in respect to the sale of Plaintiff growers' crops to third party produce buyers.  *Moore* is a case in which twelve named plaintiffs, all growers of produce ("*Moore* Plaintiffs"), have joined in asserting claims against C.H. Robinson affiliates ("Defendants"), alleging that Defendants failed to market each of *Moore* Plaintiff's produce crop in accordance with contractual and other duties, resulting in such Plaintiff's loss of crop value ("non-marketing claims").  *Lusk* is a case in which four named plaintiffs, all growers of produce ("*Lusk* Plaintiffs"), have joined in asserting, on their behalf and on behalf of an alleged class of persons similarly situated, claims that Defendants failed to disclose and account for certain overcharges and vendor rebates which wrongfully shorted each *Lusk* Plaintiff's proceeds from the sale of their crops ("nondisclosure/shorting claims").

**B.   Parties:**   *Moore* Plaintiffs are David Moore and 12 other produce growers from various areas of the United States and Peru.  *Lusk* Plaintiffs are Terry Lusk, Jason Lusk and Justin Lusk, and JMR Farms, Inc., all produce growers.  While the *Moore* Plaintiffs and the *Lusk* Plaintiffs are all represented by the same lawyers, the *Lusk* Plaintiffs are not parties in *Moore,* and the *Moore* Plaintiffs are not parties in *Lusk.*  However, certain *Moore* Plaintiffs may have non-disclosure/shorting claims in respect to years in which their crops were marketed, claims about which such *Moore* Plaintiffs could be putative class members in *Lusk.*

**C.   Claims:**   The <u>non-marketing claims</u> in *Moore* involve allegations by the *Moore* Plaintiffs that they as produce growers entered into annual contracts with Defendants in connection with which Plaintiffs agreed to grow, harvest and pack their produce crop to be marketed exclusively, on a consignment basis, by Defendants to third party buyers.  Further,

each *Moore* Plaintiff alleges that Defendants failed to market such plaintiff's crops, resulting in crop losses of such *Moore* Plaintiff. The nondisclosure/shorting claims in *Lusk* involve allegations by each *Lusk* Plaintiff that such Plaintiff as a produce grower entered into contracts with Defendants in which Defendants would market each *Lusk* Plaintiff's crops to third party buyers, and remit to such *Lusk* Plaintiff the sales proceeds after a reduction of such proceeds for Defendants' commission and certain other costs, including costs of freight. Further, each *Lusk* Plaintiff alleges that Defendants wrongfully shorted such Plaintiff's sales proceeds by freight overcharges and other unauthorized charges, keeping vendor rebates, and by wrongfully failing to disclose and account for the same.

        **D.**    **Conclusion**:   As discussed below, after a careful review of all the allegations in the *Moore* and the *Lusk* complaints, and the law (both federal and Minnesota) concerning what constitutes the same or different causes of action or claims in respect to the issue of claim-splitting and in respect to the doctrine of *res judicata* or claim preclusion, it appears that the non-marketing causes of action or claims in *Moore* are not same as the nondisclosure/shorting causes of action or claims in *Lusk*. The causes of action in *Lusk* arose at different times over varying years compared to the causes of action in *Moore*, the causes of action in *Lusk* are sustainable on the basis of different evidence respecting the subject alleged breaches and assertions of liability as compared to such evidence necessary to sustain the causes of action in *Moore,* the wrongs alleged in *Lusk* are different than the wrongs alleged in *Moore,* and the *Lusk* Plaintiffs have no non-marketing claims for the years they put at issue in *Lusk*, and the *Moore* Plaintiffs have no nondisclosure/shorting claims for the years they put at issue in *Moore*.

## II.    M0TIONS TO DISMISS:  CLAIM SPLITTING AND RES JUDICATA

        **A.**    **Introduction:**  Defendants move to dismiss *Lusk* and *Moore,* and to strike/dismiss class allegations in *Lusk*.  Defendants advance their motions under Rules 12(b)(6), 12(f) and 23(d)(1)(D). Rule 12(b)(6) permits of a dismissal for Plaintiffs' failure to state a claim. Rule 12(f) permits striking from Plaintiffs' complaint any redundant, immaterial, impertinent or scandalous matter.  Rule 23(d)(1)(D) provides that the court may require that Plaintiffs' complaint be amended to eliminate class allegations.  Defendants do not claim that the allegations of either the *Lusk* or *Moore* complaint fail to state a claim.

Defendants' positions are in essence: (1) that Plaintiffs have improperly split claims between *Lusk* and *Moore* such that one or both cases should be dismissed;[1] and (2) that the *Lusk* Plaintiffs and their counsel, having split claims between the two cases, cannot adequately represent the alleged class such that the class allegations in *Lusk* should be dismissed or stricken. We first deal with Defendants' claim-splitting motions.

        **B.**         <u>**Claim Splitting: Res Judicata or Claim Preclusion**</u>: As noted, Defendants' assert that "Plaintiffs" have inappropriately split their claims between *Lusk* and *Moore*.[2] Defendants contend that the prohibition on claim-splitting requires a plaintiff to "bring all claims arising out of a common set of facts in a single lawsuit," citing *Elgin v. Dep't of Treasury*, 567 U.S. 1, 34 (2012).[3] Here both sides acknowledge that claim-splitting rules derive from the doctrine of *res judicata*, where a plaintiff against whom there was a judgment in case #1, pursues against the same defendant a different theory arising out of the same facts asserted in case #2. A Minnesota case cited by Defendants, *Brown-Wilbert v. Copeland Buhl & Co*., 715 NW 2d 484 (Ct. App. 2006), confirms the necessity of *res judicata* elements to a contention of claim-splitting:

> Thus, it is well settled in Minnesota that it is the doctrine of *res judicata* that prevents parties from splitting claims. Respondent, nonetheless, invites us to follow the California Supreme Court by adopting the prohibition against claim splitting as an affirmative defense separate from the doctrine of *res judicata.* (citations omitted)

---

[1] It is a bit unclear as between *Lusk* Plaintiffs and *Moore* Plaintiffs, which Plaintiffs the defendants contend have split claims. While early in their briefing, there is a reference to *Moore* Plaintiffs splitting their claims, other parts of the argument seem to assert claim-splitting in respect to all Plaintiffs, and at other parts claim-splitting by *Lusk* Plaintiffs (relative to claim exclusions). For reasons discussed below, including the fact that the *Lusk* Plaintiffs have not made claims in *Moore*, and the *Moore* Plaintiffs have not made claims in *Lusk*, there has not been a showing that any Plaintiff has split claims.

[2] Defendants use the term "Plaintiffs" in varying ways, at times seemingly conflating the Plaintiffs in *Lusk* (Terry, Jason, Justin Lusk and JMR Farms), with the Plaintiffs in *Moore* (David Moore and 12 other parties other than Terry, Jason, Justin Lusk and JMR Farms), and perhaps even with Plaintiffs' counsel. As discussed below, unpacking the term "Plaintiffs" is important in assessing doctrines of claim-splitting and preclusion.

[3] This referenced statement is in the dissent in *Elgin*. And while the statement appears to be correct generally, it lacks considerable detail and qualifications relative to the application of claim-splitting rules and the *res judicata*/claim preclusion doctrine, as discussed below.

But Minnesota law is clear that the prohibition against <u>claim splitting is inextricably linked to *res judicata*</u>. And there is no caselaw linking the claim-splitting prohibition to any other rule or doctrine. * * * Consequently, we decline to adopt the prohibition against claim splitting as an affirmative defense separate from the doctrine of *res judicata*." (emphasis added)

Defendants, citing to *Brown*, supra, state "Where a dismissal with prejudice is sought, claim splitting supports that remedy <u>only</u> if the elements of *res judicata* are also present." (emphasis original)

The law applied in this District is in accord, providing that when *res judicata* is not applicable, there is no claim-splitting. In *ResCap Liquidating Trust v. PNC Bank, N.A.*, Case No. 17-cv-0196, Judge Nelson, noting that enforcing the prohibition against claim-splitting is discretionary,[4] declined to find claim-splitting when *res judicata* was not shown:

A court has the "<u>discretion to enforce</u> that requirement as necessary 'to avoid duplicative litigation.'" <u>Principles of res judicata apply,</u> except the requirement of a final judgment. (citations omitted)

\*      \*      \*      \*

In order to be barred by res judicata, a claim must "arise out of the same nucleus of operative fact[s]" as the prior claim or be "based upon the same factual predicate." To determine whether the claims are the same, the Court examines "<u>the factual bases for the claims, not the legal theories</u>." (citations omitted). (emphasis added)

The Court finds that principles of res judicata do not apply because the Trust's claims against PNC as successor to CBNV <u>do not arise out of the same nucleus of operative facts</u> as the Trust's claims against PNC as successor to National City.

---

[4]  The Supreme Court in *Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012), also noted claim-splitting determinations are discretionary:

Petitioners counter that doctrines regarding claim splitting and preclusion would bar parallel suits before the MSPB and the district court. But such doctrines would not invariably eliminate the possibility of simultaneous proceedings, for <u>a tribunal generally has discretion to decide whether to dismiss a suit when a similar suit is pending elsewhere</u>. See 18 C. Wright et al., Federal Practice and Procedure §4406 (2d ed. 2002 and Supp. 2011). (emphasis added)

> With respect to PNC's argument that it will be prejudiced by having to litigate two separate actions, the Court is not unsympathetic to PNC's situation. <u>But any burden caused by the Trust's decision to litigate its claims against PNC in two separate actions filed almost four years apart can be alleviated through efficient case management</u>. (emphasis added)

Other federal court authority confirms that claim-splitting is an adjunct to *res judicata*, albeit not requiring a final judgment.[5] Accordingly, since determining the existence of a claim-splitting prohibition requires a finding of *res judicate*, we do a careful examination of *res judicata*/claim preclusion to assess whether a judgment in *Moore* would preclude the claims in *Lusk*.[6]

Federal law and Minnesota law seem aligned on *res judicata*/claim preclusion elements, each requiring both party and cause of action/claim identity.[7]  In *Lane v. Peterson*, the 8th Circuit, citing *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326, said, "Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit <u>involving</u>

---

[5] See e.g. *Stone v. Department of Aviation*, 453 F.3d 1271, 1278 (10th Cir. 2006)("A plaintiff's obligation to bring all related claims together in the same action arises <u>under the common-law rule of claim preclusion</u> . . . . See also 18 C. Wright et al., Federal Practice and Procedure § 4406, p. 40 (2d ed.2002, Supp.2011) (discussing "principles of 'claim splitting' that are similar to claim preclusion, but that do not require prior judgment")(emphasis added)

[6]  I have analyzed the res judicata issue from the standpoint of whether a final judgment in *Moore* would preclude a claim in *Lusk*.  While the issue could be analyzed from the standpoint of whether a final judgment in *Lusk* would preclude a final judgment in *Moore,* the arguments of Defendants generally focus otherwise.  Moreover, it is likely that the case to get to judgment first would be *Moore*, as *Lusk* has class allegations which could delay its trial readiness.  In any event, the issues, as discussed below, are the same regardless of which of the two cases is assumed to be the earlier to judgment.

[7]  This District Court, in respect to whether federal or state law governed *res judicata* and claim splitting issues, concluded that there was no meaningful difference. In *Magee v. Hamline University*, Civ. No. 13-1164 (JRT/FLN), Judge Tunheim noted: "Furthermore, even assuming that Minnesota law governed the preclusive effect of *Magee I,* the Court's analysis of the application of res judicata would not be altered because the elements of res judicata under Minnesota law are nearly identical to the elements of res judicata under federal common law. *Compare Yankton Sioux Tribe v. U.S. Dep't of Health & Human Servs.,* 533 F. 3d 634, 639 (8th Cir.2008), *with Hauschildt v. Beckingham,* 686 N.W.2d 829, 840 (Minn. 2004)."  A federal court's application of preclusion rules in diversity cases may implicate the law of the forum in which the judgment occurred.  See *C.H.RobinsonWorldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8thCir. 2012). Accordingly, while I am assuming the application of federal law, law from Minnesota appellate courts, where useful, has been referenced.

the <u>same parties</u> or their privies based on the <u>same cause of action.</u>"   *Lane* references an earlier 8th Circuit decision in *Poe v. John Deere Co.,* <u>695 F.2d 1103, 1105</u> (8th Cir. 1982), also deciding that claim preclusion obtains when the <u>parties and the claims</u> are the same.   And in the more recent Minnesota Supreme Court case of  *Mach v. Wells Concrete Products Co*., 866 NW2d 921 (Minn. 2015), the court said:

> "Alternately called "claim preclusion" . . . *res judicata* is a finality doctrine that applies "when a subsequent action or suit is predicated on the <u>same cause of action</u>," or claim that has been previously determined by a judgment.  A subsequent <u>claim</u> is precluded when "a prior claim involved the <u>same cause of action</u>, there was a judgment on the merits, and the claim involved <u>the same parties</u> or their privies."  (emphasis added)

In short, the law is clear and there is no dispute between the parties, that claim-splitting requires a showing of *res judicata* or claim preclusion, and *res judicata* or claim preclusion obtains only when, in respect to two cases, (1) the parties are the same, and (2) the causes of action or claims are the same.   Here as between *Moore* and *Lusk*, neither such element has been shown.

### 1.      Plaintiffs in *Lusk* are not likely to be precluded by an adverse final judgment in *Moore* as there is no party in *Lusk* that is a party in *Moore*:

Before turning to the *res judicata* predicate to claim-splitting, we note that claim-splitting by definition is <u>a plaintiff</u> splitting his claim between two different cases.  Here, the *Lusk* Plaintiffs only asserted claims are those in *Lusk*, and the *Lusk* Plaintiffs have not asserted any claim in *Moore.*   And the *Moore* Plaintiffs only asserted claims are those in *Moore*, and the *Moore* Plaintiffs have not asserted any claim in *Lusk.*  Moreover, for the years subject to each Plaintiff's allegations, no *Lusk* Plaintiff has a non-marketing claim which could be pursued in *Moore,* and no *Moore* Plaintiff has a nondisclosure/shorting claim which could be pursued in *Lusk*.  There has been no showing that any plaintiff has split any claim.

Moving to *res judicata/*claim preclusion, the fact that the Plaintiffs in *Lusk* are not Plaintiffs in *Moore,* precludes Defendants' claim-splitting contentions.   Again, as claim splitting requires a showing of claim preclusion, for any final judgment in *Moore* to bar

Plaintiffs in *Lusk*, the Plaintiffs in *Lusk* must be the same plaintiffs as in *Moore*.[8]   Here, Terry

Lusk, Jason Lusk, Justin Lusk and JMR Farms are the Plaintiffs in *Lusk*, and they are distinct

from and not the same parties as David Moore or the other 12 *Moore* Plaintiffs.  And while

there are class claims in *Lusk*, and while some *Moore* Plaintiffs may be putative class

members in *Lusk* in respect to different years than those at issue in *Moore*, there has been no

class certification and today no putative class member is a *Lusk* Plaintiff or party.[9]  Moreover,

given Defendants' contention that there should never be class certification, it is difficult

presently to credit speculation that in the future  there may be some identity of parties

between the cases.[10]  So not only has there been no showing of any Plaintiff splitting claims,

_____

[8]  While the same party element of *res judicata* would include privies, Defendants have not claimed
that the *Lusk* Plaintiffs are privies to the *Moore* Plaintiffs, or vice versa, nor have Defendants shown
any related requisites. See *Woodards v. Chipotle Mexican Grill, Inc,* 14-cv-4181 (SRN/SER)(D. Minn.
2015: "In general, privity involves a person so identified in interest with another that he represents
the same legal right.  There are three generally recognized categories of nonparties who will be bound
by a prior adjudication: (1) a nonparty who controls the original action; (2) a nonparty whose
interests are represented by a party to the original action; and (3) a successor-in-interest to a party."
To date, there has been no showing that any party in either *Lusk* or in *Moore* is so identified with any
party from the other case as to "represent the same legal right" or "control" the other action or is a
"successor in interest" to a party from the other case.  Given that the parties in each of the two cases
are pursuing different claims or seeking redress from different wrongs, as discussed here, privity
does not appear viable.  However, given the class nature of *Lusk,* and the common lawyering between
the parties in the two cases, a future showing of privity cannot be foreclosed.  Presently, however,
there has been no such showing.

[9]  While there has been much litigation on the question of if and when absent class members, even
post-certification, become parties to a lawsuit, become subject to document discovery, become
subject to counterclaims by defendants or become clients of class counsel, it is axiomatic that pre-
certification, as here, a pre-certified or opt-out absent class member in *Lusk* is not a party and is not
subject to any judgment even in *Lusk,* let alone in *Moore.*  See Rule 23(c). See generally, *In Re General
American Life Insurance Company Sales Practices Litigation*, 357 F. 3d 800, 803 (8  Cir. 2004).

[10]  The parties skirmish as to historical rationale or "maneuvering" concerning earlier re-alignments
or shuffling of the parties and claims between *Townsend, Moore* and *Lusk*.  This back and forth over
history has not been terribly influential, as there has been no showing that the actual parties to these
cases are not actual parties distinct from and without any relationship or affiliation between one
another.  And there has been no showing that counsels' clients are not actual clients with actual
decision-making rights and roles of clients and parties.  While one appreciates the considerable
influence counsel has on decisions involving case alignment and joinder issues, the fact that counsel
and clients make decisions in the best interests of advancing legal claims against their adversary
seems neither surprising nor untoward.  In short, we are where we are, counsel are counsel, clients
are clients, parties are parties, and there has been no showing that any are not distinct persons with
distinct roles and rights.  This is particularly true here where each client has alleged meaningful

there has been no showing of the party identity between *Moore* and *Lusk* necessary for *res judicata/*claim preclusion.

**2.      Plaintiffs in *Lusk* would not be precluded by an adverse final judgment in *Moore, as* the cause of action in *Lusk* is not the same cause of action as in *Moore*:**

Again, claim-splitting is tied to a showing of *res judicata*. Here, in addition to the above-discussed failure to show a lack of the <u>party identity</u> element of *res judicata,* it has not been shown that there is <u>cause-of-action or claim identity</u> necessary for a final judgment respecting the non-marketing claims in *Moore* to preclude the *Lusk* Plaintiffs' pursuit of nondisclosure/shorting claims.[11]   We examine the caselaw governing whether causes of action or claims in two cases are the same.

In *Lane v. Peterson*, supra, the 8th Circuit held that for claim preclusion, the two cases must be "based on the same cause of action," noting that the 8th Circuit looks to the "Restatement (Second) of Judgments, section 24, to assess whether two causes of action are the same. Generally, under this approach a claim is barred by *res judicata/*claim preclusion if it arises out of the same nucleus of <u>operative facts</u> . . . ." Id. (emphasis added).  Similarly, the 8th Circuit in *Hufsmith v. Weaver*, 817 F. 2d 455 (8th Cir. 1987), declining a focus on any legal duty or theory, concluded it was all about the facts:

> "Although it is often difficult to determine whether two claims are the same for purposes of res judicata *. . .* in general, that if a case arises out of the same nucleus of <u>operative fact</u>, or is based upon the same <u>factual predicate</u>, as a former action, [then] the two cases are really the same `claim' or `cause of action' for purposes of res judicata."  (emphasis added).

And in *Poe*, supra, we have the same 8th Circuit guidance:

> "The parameters of a "claim" cannot be stated with mathematical precision. For the purpose of determining whether a plaintiff presents two separate claims, we have looked to whether or not <u>proof of the same facts will support both actions</u>, or to whether <u>the wrong for which redress</u> is sought is the same in both actions."  (emphasis added)

---

claims—perhaps somewhat unlike certain consumer class cases where no one person has any meaningful monetary claim.

[11]   I say "doubtful" because at this point in the litigation we must rely on the allegations in the *Lusk* and *Moore* complaints (neither of which are yet answered) to appreciate the issues and thereby appreciate similarities or differences between the two cases' "nucleus of operative facts," and any similarities or differences between the two cases' "wrongs."

Similar to *Poe*, in removal actions where the determination of same or separate causes of action were at issue, the Supreme Court has focused prominently on the "wrong" or "single wrong." *American Fire Cas. Co. v. Finn*, 341 U.S. 6 (1951).

And again, the 8th Circuit has endorsed the Restatement Second Judgments, section 24, the question focusing on the factual transaction(s) at issue, namely whether:

> " . . . all or any part of the transaction, or series of connected <u>transactions</u>, out of which the action arose. What <u>factual</u> grouping constitutes a "transaction," and what groupings constitute a "series," are to be determined pragmatically, giving weight to such considerations as whether the <u>facts</u> are related in <u>time</u>, <u>space, origin, or motivation</u>, whether they form a <u>convenient trial unit</u> . . ." (emphasis added)

Finally, as discussed by our Minnesota Supreme Court in *Mach, supra,* "a cause of action or claim is a group of <u>operative facts</u> giving rise to one or more <u>bases for suing</u>," and claims are not considered the same cause of action "if the right to assert the second claim did not arise <u>at the same time</u> as the right to assert the first claim," and whether the cases involve the same cause of action depends on "whether the <u>same evidence</u> <u>will sustain</u> both actions."   In short, the caselaw universally focuses on an assessment of sameness or differences in "facts" and "evidence" underpinning the claim.

Applying all this guidance here, we find that while *Moore* and *Lusk* share some common contractual elements   albeit differences in certain contractual provisions and contractual duties, *Lusk* and *Moore* do not share a common nucleus of operative "facts,"[12] do not share common "evidence" necessary to "sustain" or "facts" to be the "basis" of the asserted liabilities, do not share a common factual "transaction" out of which the asserted liabilities arise, do not share the same "wrong" or "single wrong," are not based on the same "factual" predicate, and do not share a common "trial" unit.

---

[12]   It is useful to understand the ordinary meaning of these terms.  According to Merriam Webster Dictionary, "nucleus" means "*the central and most important part of an object, movement, or group, forming the <u>basis</u> for its activity and growth.*"   And "operative" means "<u>*producing an appropriate effect*</u>," and "*most significant or <u>essential</u>.*"

Defendants, largely turning their attention away from the operative facts or factual predicates of the two cases, focus on the asserted legal duties, namely (a) that both cases assert contractual duties (albeit different between the cases) from some claimed comparable contractual provisions of comparable contracts, and (b) that both cases assert statutory duties of some claimed comparable provisions of the Perishable Agriculture Commodity Act ("PACA").[13]  However, none of these asserted <u>legal</u> duties are "operative <u>facts</u>," and none are "<u>factual</u> predicates" nor "<u>evidence</u> to sustain" the asserted liabilities in the cases.  While one appreciates that the mere existence of words or provisions of a contract or statute (whether common or different) can be factual (and in respect to a contract even evidentiary), such words or provisions speak for themselves, are not likely to be the subject of any dispute or to consume any significant discovery or trial attention in either case, and standing alone they are not the facts constituting the "wrong" asserted in either case.[14]   The <u>legal duties</u> from these contractual or statutory provisions (which again themselves differ between the cases   see note 13, *supra*) are not operative facts, but are part of the <u>legal theories</u> of the claims which are not part of the *res judicata* inquiry.[15]

---

[13]   It has not been shown that the same contractual provisions claimed to have been breached in respect to the *Moore* non-marketing claims, are those alleged to have been breached in the *Lusk* non-disclosure/shorting claims. Rather, a careful review of the *Moore* and *Lusk* complaints show allegations of differing contractual provisions and duties—allegations of contractual provisions and duties to market respecting the non-marketing claims in *Moore,* compared to allegations of contractual provisions and duties of recordkeeping, remitting sales proceeds and permissible charges against proceeds respecting the non-disclosure/shorting claims in *Lusk.*  And while both cases allege the application of PACA, each alleges different duties from the statute.  Of course, the words of a statute are neither facts nor evidence, but law to be applied or instructed by the court.

[14]  As stated in the *Restatement*, there are pragmatic considerations such as whether the facts in two cases form a "convenient trial unit" or as the comments discuss, the same "litigative unit." Understanding the anticipated trial proof of the operative facts is useful to assess whether the factual essence of the two cases pragmatically form a "convenient trial unit," considering trial time, jury understanding or confusion, and the like.  And as discussed below, whether there are common or different legal duties which a court will require the fact-finder to apply against any factual nucleus, does not mean that such legal duties constitute evidence in assessing a "convenient trial unit." See note 15, *infra*.

[15]   Perhaps emblematic of the differing positions of the parties, one notes that the almost universally used phrase "nucleus of operative facts," is not the same as "nucleus of operative facts <u>or law</u>."  The "or law" appendage is not found in the cases, and is not part of the *res judicata* inquiry. Two cases from this District follow 8th Circuit law and hold that the inquiry is not whether the claims arise from any common <u>legal</u> theory or <u>legal</u> duty giving rise to the asserted liability, but whether the liability being asserted is based on

Here, while *Lusk* and *Moore* are early in discovery, one can carefully review the complaints in each case and anticipate the likely common nucleus of operative facts, the most "essential" facts which are the "basis" for liability, which are the evidence to "sustain" the liability, which are the facts of the subject "wrong for which redress is sought" and those likely to consume disputes and trial evidence    forming the "convenient trial or litigative unit."  We can safely anticipate the following factual predicates to be the basis for the liability claimed by Plaintiffs in each case    the evidence to be played out in discovery and at trial:

   a.   <u>*Moore*</u>: As to each of 13 plaintiff growers in *Moore* (different Plaintiffs than those in *Lusk*)*,* were their crops <u>not marketed</u>, and what is Defendants' rejoinder evidence concerning any failure to market.  This is the factual gravamen of the claimed breach or wrong (contractual or otherwise) in *Moore*, unrelated to any claimed breach or wrong in *Lusk*.  In fact, the opposite is an operative fact in *Lusk,* as the *Lusk* grower Plaintiffs' crops <u>were marketed</u> and the issue in *Lusk* is Defendants' alleged <u>post-marketing</u> wrongful nondisclosure and shorting of each *Lusk* Plaintiff's proceeds.

   b.   <u>*Moore:*</u>  As to each of some 13 grower Plaintiffs in *Moore* (different Plaintiffs than those in *Lusk*), what are the cause facts with respect to each Plaintiff's lost crop, this presumably implicating for each *Moore* Plaintiff the ability to otherwise market the subject crop, facts concerning mitigation or avoidable costs, facts surrounding any unsold or wasted crop, etc.  And again, what is Defendants' rejoinder evidence.  These cause facts are not the cause facts in *Lusk*    the *Lusk* Plaintiffs neither alleging, nor having any crop losses from, the non-marketing of their crops.

   c.   <u>*Lusk:*</u> As to each of the four grower Plaintiffs in *Lusk* (different Plaintiffs than those in *Moore*), did Defendants overcharge for freight costs and fail to disclose and account for the same, and thereby short the remittance to each

---

or arises from the same or different operative <u>facts</u> or factual <u>wrong</u>. Judge Nelson in *ResCap Liquidating Trust,* supra, following 8   Circuit authority, held: "In order to be barred by res judicata, a claim must be based upon the same <u>factual</u> predicate. To determine whether the claims are the same, the Court examines the <u>factual bases for the claims, not the legal theories</u>." (citations omitted) (emphasis added). Similarly, in *Magee v. Hamline University*, supra, Judge Tunheim concluded that it was not the "rights that may have been invaded," but the <u>facts</u> of the alleged wrong.  Magee's claim that she was wrongfully terminated as a professor—the wrong, was found to be the issue, irrespective of differing legal duties claimed in the second case to give rise to her assertion of liability.  In *ResCap, Magee, Lane, Hufsmith, Poe, Mach* and the *Restatement*, the assessment is the <u>facts</u> of the alleged wrong which constituted the "<u>transaction [as] the basis of the litigative unit or entity which may not be split</u>. *Restatement (Second) of Judgments* § 24, comment at 197 (1980)."

such *Lusk* Plaintiff for the proceeds of the sale of each such Plaintiff's crop. What is Defendants' rejoinder evidence as to the claimed shorting and nondisclosure. These facts are not an issue in *Moore*, as there were no marketing proceeds to short or account, as the claim is that there was no marketing.

d.  *Lusk*: As to each of the four grower Plaintiffs in *Lusk* (different Plaintiffs than those in *Moore*), did Defendants charge or overcharge for costs not allowed as reductions to Plaintiffs' proceeds and fail to disclose and account for the same, and thereby short the remittance to each such *Lusk* Plaintiff for the proceeds of the sale of such Plaintiff's crop. What is Defendants' rejoinder evidence. These facts are not an issue in *Moore*, as there were no marketing proceeds to short or account, as the claim is that there was no marketing.

e.  *Lusk*: As to each of the four grower Plaintiffs in *Lusk* (different Plaintiffs than those in *Moore*)*, did Defendants obtain and fail to disclose and account for any rebates Defendants obtained on such grower's purchases from vendors, and thereby short the remittance to each such Plaintiff for the proceeds of the sale of such Plaintiff's crop. What is Defendants' rejoinder evidence. These facts are not an issue in *Moore*, as there were no marketing proceeds to short or account, as the claim is that there was no marketing.

f.  *Lusk & Moore: The time the cause of action arose:*  As to the time at which the causes of action arose    a *res judicata* element as noted in the Restatement and the Minnesota Supreme Court in *Mach*, the *Lusk* nondisclosure/shorting claims allegedly arose during a number of varying years through 2019 when allegedly Defendants, underline after marketing each of the grower *Lusk* Plaintiff's crop for whatever year such Plaintiff asserts, shorted each plaintiff's proceeds. The *Moore* non-marketing claims allegedly arose at underline market-ready times in varying years when each of the 13 *Moore* Plaintiff's crops were ready to be sold. There has been no showing that any of the different breaches or harms occurred at the same times.  In short, we have a host of varying times from 2012 through 2019, at varying post-market times for each of four *Lusk* Plaintiffs, and varying market-ready times for each of 13 *Moore* Plaintiffs. The "times" when the claims arose, while even different between the four claims in *Lusk* and the 13 claims in *Moore,* are different times as between *Lusk* and *Moore*.[16]

g.  *Lusk*: Trial Evidence-"Convenient and Litigative Trial Unit": And as we anticipate the trial evidence, while a short time may be spent in introducing contracts between the parties, some of which may be comparable exhibits in

---

[16] Not only do these differences add to the recognized differences in causes of action or claims, they detract from the unified trial unit and add to jury confusion.  In addition to the "time" issue identified in the Restatement and in *Mach,* there is no showing of the same "space, origin or motivation" between the *Lusk* and *Moore* factual predicate—all off which are different between the cases.

the two cases, most of the trial evidence will be different.  In *Lusk* the anticipated trial evidence to "sustain" the nondisclosure/shorting claim, seemingly will be: (a) each of the four *Lusk* Plaintiffs (not *Moore* Plaintiffs) for each of the years at issue testifying as to the agreements and understandings with Defendants in respect to remittances from the proceeds of the sale of each of such Plaintiff's crops; (b) each of the four *Lusk* Plaintiffs (not *Moore* Plaintiffs) for each of the years at issue testifying as to what they received in respect to such remittances, (c) each of the four *Lusk* Plaintiffs (not *Moore* Plaintiffs) for each of the years at issue testifying as to what they were told, what accounting was provided to them and what they were not told, (d) testimony and records showing what the actual charges (freight and otherwise) were in respect to each of the four *Lusk* Plaintiffs (and class members if there be a certified class) for each of the years at issue; (e) testimony and records showing what vendor rebates were received by Defendants in respect to each of the four *Lusk* Plaintiffs (and class members if there be a certified class) for each of the years at issue; (f) testimony and records/exhibits  perhaps some of which is expert testimony, on the excessiveness of any charges or rights to vendor rebates in respect to each of the four *Lusk* Plaintiffs (and any class members if there be a certified class) for each of the years at issue; (g) records respecting what was disclosed or accounted for to the four *Lusk* Plaintiffs (and any class members if there be a certified class) for each of the years at issue; and (h) all of the Defendant witnesses or experts in rebuttal or explanation of the Plaintiffs' evidence (a) to (g).  Little of this evidence (a) through (h) has been shown to have, nor can one think of, any anticipated significant relevance to the non-marketing claims in *Moore,* and thus most of the evidence in *Lusk* will not be a part of the nucleus of operative facts in respect to the non-marketing claims in *Moore*. Presumably this evidence involving multiple Plaintiffs and bearing on class members if there be a certified class, and subject to a number of varying years, will consume weeks of trial time, and will (along with related proof of damages) be the *Lusk* "convenient or litigative trial unit."

h.   *Moore:*  Trial Evidence-"Convenient and Litigative Trial Unit":  In *Moore*, seemingly the anticipated trial evidence in respect to varying years will be: (a) each of 13 *Moore* Plaintiffs (not *Lusk* Plaintiffs) testifying as to their agreements with Defendants concerning the marketing of their crops for each of the years in question; (b) each of 13 *Moore* Plaintiffs (not *Lusk* Plaintiffs) testifying as to their growing and harvesting of their crops and the related costs for each of the years in question; (c) each of 13 *Moore* Plaintiffs (not *Lusk* Plaintiffs) testifying as to their reliance on, and failure of, Defendants marketing their crop during each year in question; (d) each of 13 *Moore* Plaintiffs (not *Lusk* Plaintiffs) and perhaps experts testifying as to the cause of crop loss associated with the failure to market, market conditions, etc. for each of the years in question; (e) testimony and records concerning Defendants marketing the crops of growers other than *Moore* Plaintiffs for each of such Plaintiff and years in question; (f) all of the exhibits of

communications between each of 13 *Moore* Plaintiffs and Defendants relative to the marketing of their crops and Defendants marketing of crops of others for each of the years in question; (g) all of the evidence and exhibits respecting why each of the 13 *Moore* Plaintiff's crops were not marketed for each of the years in question; and (h) all of the evidence and exhibits of Defendants concerning any failure to market each of the 13 *Moore* Plaintiff's crops and evidence, including likely expert testimony, as to each of the 13 *Moore* Plaintiff's crop loss, mitigation, market factors, avoidable losses, etc. for each of the years in question. Little of this evidence (a) through (h) has been shown to have, nor can one think of, any anticipated significant relevance to the nondisclosure/shorting claims in *Lusk,* and thus most of the evidence in *Moore* will not be a part of the nucleus of operative facts in respect to the nondisclosure/shorting claims in *Lusk.* Seemingly this evidence in *Moore,* involving 13 Plaintiffs and claimed wrongs in varying years, will constitute weeks of trial time, and will constitute the "convenient and litigative trial unit" of *Moore.*

In short, as between *Lusk* and *Moore*, there does not appear to be a common "convenient trial or litigative unit," nor a common "nucleus of operative facts," nor a common "factual grouping" of evidence which is the "basis" for, or which "sustains," the asserted liability, nor common facts constituting the claimed "wrong," etc. While all of the tests concerning the commonality of causes of action or claims seem wanting here, the guidance of the 8th Circuit decision in *Poe*, supra, is perhaps the most useful. The *Poe* court, noting the "transactional" guidance of the Restatement, and rather than assessing legal duties (such as those derived from contract compared to those derived from statute) which could differ, focused on the facts that as between *Poe* 1 and *Poe* 2, the (i) plaintiff's cause of action involved the wrong of her termination occurring at a given time, and (ii) the defendant's evidence of non-wrongful reasons for such termination:

> *Poe I* and *II* present the same claim. They emerge from the same transaction and share precisely the same nucleus of operative facts. The thrust of both cases is whether Ms. Poe was wrongfully discharged on April 21, 1977, or whether, as John Deere contends, she was terminated because of excessive and inexcusable absenteeism and because she made an unauthorized use of the company's name. Ms. Poe concedes that both cases involve the same facts and that she would present the same evidence in *Poe II* as she did in *Poe I.*
> (emphasis added)

The *Poe* focus was the same as Judges Nelson's and Tunheim's focus on the <u>facts of the</u> <u>wrong</u> in *Rescap* and *Magee* (note 15 supra).[17]  Here the operative facts of *Lusk* will be those of the "wrong" of Defendants' nondisclosure/shorting of proceeds from the <u>marketed</u> crops of the *Lusk* (not *Moore*) Plaintiffs and Defendants' rejoinder evidence otherwise, operative facts entirely different than those of the *Moore* "wrong" of Defendants' <u>failure to market</u> the 13 *Moore* Plaintiffs' (not *Lusk* Plaintiffs') crops during a number of varying years and Defendants' rejoinder evidence otherwise.  And as noted, these different factual "wrongs" or different factual "bases" of liability, result in very different "evidence to sustain" the asserted liability, and very different "convenient trial and litigative units."[18]

---

[17] In the appeal, *Magee v. Hamline University*, 775 F. 3d 1057 (8th Cir. 2015), the 8   Circuit, affirming Judge Tunheim, also focused on the facts of the claimed wrong:

> After a thorough review of the record, we agree with the district court that <u>the gist</u> <u>of</u> the § 1983 claim in *Magee I* and the § 1981 claim in *Magee II* <u>is that the</u> <u>defendants' conduct leading up to the termination of Magee, in addition to the</u> <u>ultimate decision to terminate her,</u> violated her constitutional rights. In other words, the federal claims in each suit <u>are based on Magee's termination from</u> <u>employment as well as the series of events precipitating that termination.</u> Thus, we conclude that the § 1981 claim in *Magee II* is barred by res judicata because it arose "out of the <u>same nucleus of operative facts</u>" as the § 1983 claim in *Magee I.* (emphasis added)

[18]  Defendants prominently reference Judge Magnuson's decision in *MacIntyre v. Lender Processing Servs., Inc.,* 2012 WL 4872678 (D. Minn. 2012).  However, *MacIntyre* makes clear that the issue is not, as is Defendants' focus, the <u>legal source of the duty</u>—which Judge Magnuson holds to be "irrelevant in the *res judicata* analysis." Rather, in *MacIntyre* Judge Magnuson, guided by *Lane*, supra, declined to consider the legal source of a duty (whether contract or statute), but the factual predicate or basis of the asserted liability:

> "MacIntyre's decision to bring her claims in two separate lawsuits constitutes improper claim-splitting. She argues that her claims are different because her first lawsuit depends on the terms of the employment agreement but her second lawsuit [under Title VII] does not depend on the existence of any employment agreement. This small difference, though, is <u>irrelevant in the res judicata analysis</u> [the question being] whether the claims arise out of the "same nucleus of <u>operative</u> <u>facts</u> as the prior claim. <u>*Lane v. Peterson*</u>, 899 F.2d 737, 741 (8   Cir. 1990)." (emphasis added)

Similarly here, the fact that there are legal duties claimed by Defendants to emanate from comparable contractual relationships, is not the test.   Rather, the assessment for *res judicata* purposes is the nucleus of operative facts—the alleged factual predicate or wrong, against which the

### III.   <u>STRIKING OR DISMISSING *LUSK* CLASS ALLEGATIONS</u>

**<u>A.</u>  Introduction:**  Defendants' claims to strike or dismiss the class allegations in *Lusk* are two pronged.  First, Defendants contend that because the Plaintiffs' claims have been split between *Lusk* (the nondisclosure/shorting claims) and *Moore* (the non-marketing claims), <u>issue</u> preclusion (or collateral estoppel) can result in an unfair circumstance: A Plaintiff-favorable summary judgment decision in *Moore* can be used offensively against Defendants in *Lusk,* but a Defendant-favorable summary judgment decision in *Moore* can result in one-way intervention whereby putative class members can elect to opt-out of *Lusk* and not be precluded by such a Defendant-favorable decision in *Moore*.  This circumstance, Defendants contend, should result in the striking or dismissal of the *Lusk* class allegations, or in an all-purpose consolidation of *Lusk* and *Moore.*

Second, Defendants contend that because Plaintiffs' claims have been split between *Lusk* and *Moore*, essentially by limiting the *Lusk* class claims to the nondisclosure/shorting claim and not including any non-marketing claims the class members may have, the *Lusk* Plaintiffs and their counsel are inadequate class representatives.  Defendants contend that by not including the non-marketing claims in *Lusk,* Plaintiffs are exposing class members to a forfeiture of the non-marketing claims because any judgment in *Lusk* (for or against the class*),* will be *res judicata* and preclude class members from pursuing any non-marketing claims.  As a result, Defendants contend, the *Lusk* class claims should be struck or dismissed because the *Lusk* Plaintiffs and their counsel cannot inadequately represent the class.

For reasons discussed below, Defendants' motions should be denied, as they rest on incorrect premises concerning the relevant preclusion doctrines, and in any event Defendants' concerns are best resolved by the many case management tools Judge Schiltz

---

contractual duties are applied.  And again, as between *Lusk* and *Moore*, even most of the alleged contractual duties are different.

can deploy during class certifications proceedings when class discovery has been completed and there is greater visibility into the subject issues.

**B.** **Issue Preclusion: Effect of an adverse summary judgment ruling in *Moore and* one-way intervention in *Lusk*.**

Defendants contend that Plaintiffs' claim-splitting between *Lusk* and *Moore* has exposed Defendants to an unfair one-way intervention. Again, the supposition is that if a summary judgment motion in *Moore* is decided against Defendants, it can be offensively used in *Lusk* to the advantage of the *Lusk* Plaintiffs and class members, while if such summary judgment is decided in favor of Defendants before the time for any class member to opt-out in *Lusk*, absent class members can unfairly opt out to avoid being bound by such adverse decision. This claim-splitting "heads I win tails you lose" concern, which of course is an issue only if there is the class certification Defendants contend cannot happen, misses the application of issue preclusion (collateral estoppel), and at this time is largely a case management issue. See note 4, *supra,* and accompanying text, referencing the judicial discretion in claim-splitting determinations.

First, as to issue preclusion or collateral estoppel, is the Minnesota Supreme Court's decision in *Mach,* aligned with federal court decisions, states:

> "Collateral estoppel, also called "issue preclusion," applies to specific *issues* that have previously been adjudicated. Under this doctrine, "once a court has decided an issue of fact or law necessary to its judgment, that decision <u>may preclude</u> re-litigation of the issue in a suit on a different cause of action involving a party to the first case." Collateral estoppel applies to matters that were necessarily determined in a previous judgment, "irrespective of whether the subsequent action is predicated upon the same or a different cause of action." Collateral estoppel applies when: "(1) the <u>issue was identical</u> to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a <u>party or in privity</u> with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue." Like res judicata, we "do not apply collateral estoppel rigidly," <u>but focus on whether an injustice would be worked upon the party against whom the estoppel is urged</u>. The party asserting collateral estoppel has the burden to establish that "the issue was actually presented and necessarily determined in the earlier action." (citations omitted)(emphasis added)

After studying the pleadings in both *Lusk* and in *Moore*, it seems that at this time the only potentially <u>identical</u> summary judgment issue in both cases may the <u>existence</u> of a fiduciary duty, as both the *Moore* Plaintiffs and the *Lusk* Plaintiffs allege a fiduciary duty derived from arguably common contractual relationships with Defendants.[19] Plaintiffs--albeit different Plaintiffs--in both cases claim that because their contractual relationships provide that Defendants were agents controlling grower Plaintiffs' crops through exclusive consignment marketing, Defendants had fiduciary duties to Plaintiffs.

Again, the *Lusk* Plaintiffs are not the same parties as those in *Moore*, and thus, absent the unlikely showing of privity (see note 8, *supra*), a *Moore* summary judgment ruling favoring Defendants would not be preclusive on the *Lusk* Plaintiffs.[20] Moreover, the one-way intervention is one of case management and not an issue mandating either an all-purpose consolidation or a dismissal. This is because Judge Schiltz is presiding over both cases, and if the existence of a fiduciary duty arising from the contractual relationship is truly identical between *Moore* and *Lusk* (as it must be for issue preclusion to obtain)*,* then it would be decided by Judge Schiltz identically, whether the cases are or are not consolidated. Moreover, as indicated to the parties, the class certification will be pushed to "an early practicable time," as provided by Rule 23(c), increasing the likelihood that class certification and opt-out processes will predate any summary judgment ruling.  And Judge Schiltz has

---

[19]  The various legal duties asserted in both *Lusk* and *Moore* derive from alleged express contractual duties, alleged duties under PACA, alleged implied duties of good faith and fair dealing, and alleged fiduciary duties.  As will be seen, only the <u>existence </u>of an alleged fiduciary duty is likely an *identical* summary judgment issue in both cases.  This is because the <u>existence</u> of PACA and its provisions, the <u>existence</u> of the subject contracts and their provisions and the <u>existence</u> of an implied covenant of good faith and fair dealing, are all givens.  And the disputes involving whether these duties have been breached will be <u>different</u> (not identical) summary judgment issues as between the nondisclosure/shorting claims in *Lusk* and the non-marketing claims in *Moore.*  On the other hand, the <u>existence</u> of a fiduciary duty inherent in the contractual provisions is not a given, but one that may be the subject of a summary judgment motion based on express contractual provisions.

[20] Defendants correctly observe, however, that a <u>Plaintiff-favoring</u> summary judgment in *Moore* could preclude Defendants in *Moore*--also parties in *Lusk*--from re-litigating the issue, the so-called offensive use of collateral estoppel. Again, I say "could" because such use is discretionary with the court.  *Mach,* at p. 20, *supra.* ("Like res judicata, we 'do not apply collateral estoppel rigidly,' <u>but focus on whether an injustice would be worked upon the party against whom the estoppel is urged</u>.")

total authority over the impact of any ruling on identical issues and the extent of its binding impact.[21]  Also, at such time as there is any summary judgment motion in *Moore* which could bind *Lusk* Plaintiffs or class members and precede class certification, Judge Schiltz can exercise his case management authority respecting related scheduling--deciding whether to hear or stay the motion/ruling in *Moore* until class certification and opt out rights in *Lusk* have concluded, while weighing the competing interests--namely the potential harms to Defendants from potential one-way intervention (if any) in *Lusk*, compared to the potential harms to *Moore* Plaintiffs from delaying a ruling or lengthening their time to trial.[22]  In short, given the want of party identity, there does not appear to be issue preclusion against a potential class in respect to an issue decided in *Moore* and any identical issue in *Lusk*.  And currently there are too many unknowns to either dismiss, strike or make an all-purpose consolidation ruling this far in advance of understanding the future class certification landscapes, the summary judgment landscapes, the scheduling landscapes and all the above issues, and there seems no good reason for doing so prior to such understanding.[23]

C.    **Claim Preclusion: Claim-trimming and adequacy in protecting the interests of the class:**

Defendants contend that the Plaintiffs and their counsel cannot adequately protect the interests of the class    a Rule 23 element of class certification.[24]  This contention is based on

---

[21]  See n. 20, *supra.*

[22]  Of note, Defendants can also avoid the one-way intervention problem by deferring any such motion in *Moore* and letting the issue be decided at trial—particularly since prevailing on such a motion in respect to only one of the *Moore* Plaintiffs' many non-marketing claimed duties, will not likely obviate a trial in *Moore.*

[23]  Many now unknown stars have to align for Defendants' concern about one-way intervention to come about: (a) a determination of class certification in *Lusk*—which Defendants disclaim; (b) a determination of privity between *Lusk* and *Moore* for preclusion to obtain—an unlikely determination (see n. 8, *supra*); (c) a summary judgment in *Moore* that there is no contractually derived fiduciary duty and that this issue is sufficiently identical and final to be preclusive in *Lusk*; and (d) any such Defendant-favoring summary judgment in *Moore* decided before concluding any class opt-out processes in *Lusk*.

[24]  While it is true that class allegations can be struck in motions to dismiss, generally issues such as commonality, numerosity, typicality, adequacy and the like are the subject of class certification determinations—these allegations of a class complaint taken as true for purposes of Rule 12.  In

the assertion that because the "Plaintiffs" split their nondisclosure/shorting claim (pursued in *Lusk*) and their non-marketing claim (pursued in *Moore*), the *Lusk* Plaintiffs as class representatives and their counsel are exposing the *Lusk* class members to the risk of losing any non-marketing claim which such class members may have. The supposition is that if there is a final judgment in *Lusk* (whether for or against the class)*,* Defendants can assert *res judicata* or claim preclusion to preclude any class member from ever pursuing any non-marketing claims that the *Lusk* Plaintiffs elected to not include in *Lusk.*[25] This, Defendants contend, means that the *Lusk* Plaintiff class representatives and their counsel have violated their duty to the class by  "abandoning," or "trimming" from *Lusk,* the non-marketing claims that class members may otherwise have, exposing the class members to the forfeiture of such claims.  See *Thompson v. American Tobacco Company, Inc.,* 189 FRD 544 (D. Minn. 1999).

However, again, any claim-splitting contention is underpinned by *res judicata* or claim preclusion.   Accordingly, *Lusk* class members' non-marketing claims (if any) would be precluded by any judgment in *Lusk* only if the non-marketing claim is the same claim or cause of action as the *Lusk* nondisclosure/shorting claims or cause of action.[26]  As discussed earlier

---

*Brown,* supra, relied upon by Defendants, the adequacy determination was made at the time of the class certification motion—a time after which class discovery had taken place. That a court have ample information as to class issues prior to making any class determination is all the more important given the current Rule 23(f) providing that either party may take an appeal from the subject ruling. Thus, at this stage in the proceedings, the current want of class discovery, and the large number of relevant unknowns, there seems to be little reason to decide any Rule 23 issue here, and many reasons not to do so.

[25]  Much of this may be academic until more facts are discovered, as there has been no showing here as to the number of potential *Lusk* class members who may even have non-marketing claims—which number may or may not be trivial.  We do know that no putative *Lusk* class member could have a non-marketing claim for the years such class member asserts a nondisclosure/shorting claim, as the nondisclosure/shorting claim exists only in a year in which a grower's crop was in fact marketed. This fact, as discussed earlier, diminishes the *res judicata* concern about *Lusk* class members being precluded from claimed "trimmed" or "abandoned" non-marketing claims given that a test of the same causes of action is that they occurred at the <u>same time.</u>  Moreover, as discussed below, this discussion is important to Judge Schiltz's case management tools and discretion at the time he entertains certification—such as weighing the impact of excluding from the *Lusk* class any persons with non-marketing claims.

[26]  This is not to say *Lusk* class members may not risk forfeiting non-marketing claims, as over time while *Lusk* proceedings are occurring, such non-marketing claim could become time-barred. This statute of limitation concern, of course, is a different issue than that involving claim-trimming.

at pp. 11 to 18, *supra*, the nondisclosure/shorting claim or cause of action is not the same as the non-marketing claim or cause of action, and thus a final judgment in *Lusk* would not preclude a non-marketing claim pursued by *Lusk* class members.[27] Moreover, presumably no claim preclusion determination concerning the nondisclosure/shorting causes of action, compared to the non-marketing causes of action, will become the law of the case, and if the same achieves finality such determinations likely would preclude Defendants from re-litigating the want of preclusion to bar any *Lusk* class member pursuing a non-marketing claim.[28]   For this reason, the issue here is unlike the Rule 23 inadequacies related to "claim-trimming."[29]

Additionally, beyond the fact that the non-marketing cause of action would not be claim precluded by a judgment in *Lusk* respecting *Lusk's* different nondisclosure/shorting

---

[27] See e.g. *Regions Bank v. Lee*, 905 So.2d 765, 772 – 73 (Ala. 2004), which rejected an adequacy challenge based on *res judicata* because the alleged abandoned claim was a different cause of action than that in the class action.   See generally, 6 *Newberg on Class Actions*, section 18:16 and 18:17 (5th Ed.)(Even class members post certification are not precluded by a judgment not in respect to the same cause of action, the same nucleus of operative fact, or the same occurrence or transaction.) And given that most class actions resolve by way of settlement, see *Newberg*, supra at 18:19 and 18:21, noting that while due process, opt-in processes and class notices can have a role, generally the test of whether a cause of action was precluded by a prior class settlement was whether the new cause of action was one with an "identical factual predicate" to that having been settled. See also, *Thompson v. Edward D. Jones & Co.*, 992 F. 2d 187 (8th Cir. 1993).

[28]   I say "may" because there could be an issue whether Judge Schiltz's determination here can predetermine a future preclusive impact, and whether it would be a future court, before which a *Lusk* class member brings a non-marketing claim, to determine whether such claim is precluded by a judgment or settlement in *Lusk*.   See *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 806 (1985). However, it seems likely that a no-preclusion determination by Judge Schiltz here will collaterally estop Defendants (against whom such a determination would have been made) from relitigating the identical want of preclusion <u>issue</u> in defense of a future non-marketing claim by a *Lusk* class member.

[29]   Most claim-trimming adequacy cases involve class plaintiffs not including certain (difficult to certify) individualized money damage claims in cases in which class plaintiffs bring (easy to certify) claims for statutory penalties/damages or injunctive relief  based on the same operative facts which would support individualized money damages.   For instance, *McLaughlin on Class Actions*, supra, enumerates claim-trimming cases in respect to the Telephone Consumer Protection Act (TCPA) wherein claims for statutory damages or penalties are easier to certify than individualized actual damages, but both claims arising from <u>the same cause of action or wrong—the same factual predicate</u>. These circumstances, of course, are unlike those here, as the issue in *Lusk* is not the <u>nature of damages</u> claimed <u>from the same cause of action or wrong</u>, but pursuing the nondisclosure/shorting cause of action in *Lusk* which may be less problematic to certify, and not pursuing the <u>different</u> individualized non-marketing cause of action seemingly more problematic to certify.

cause of action, there are a number of reasons to await any claim-trimming adequacy issue until class certification is before Judge Schiltz.   We begin with the U.S. Supreme Court's decision in *Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867 (1984), a decision not all that telling on the precise issues here, but oft-cited in that the decision established that a class action for injunctive relief under Rule 23(b)(2) does not preclude subsequent individual class claims for damages   even claims seemingly arising from the same factual predicate.   This decision in *Cooper* was destined to have an aftermath relative to claim-trimming adequacy issues, and in 2011 Tulane Professor Edward Sherman tracked the post-Cooper law development in, *Abandoned Claims in Class Actions Implications for Preclusion and Adequacy of Counsel. George Washington Law Review*, Volume 29 (2011). http://www.gwlr.org/wp-content/uploads/2012/08/79-2-Sherman.pdf   Professor Sherman notes that even as to excluded claims which may arise from the same factual predicate as the asserted class claim, inadequacy is not the standing result. Rather, in the event the excluded or "trimmed" claim is not susceptible to class treatment, a trial judge may conclude that class plaintiffs and counsel appropriately excluded such claim, citing to a case declining to find inadequacy even when the excluded case would be precluded: ". . . often class treatment is the only feasible way that class members can obtain a lawyer and gain access to the courts, and that strategic limitation of claims can be as critical to success as the substantive issues. It also views the class action rule as authorizing judicial discretion in the shaping of a class action to make it manageable."[30]   (emphasis added)

Interestingly, Sherman's pragmatic discussion seemed on display several years later when the 5th Circuit decided *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408 (5th Cir. 2017).  In *Slade*, the trial court held that a class plaintiff's failure to bring a claim impaired

---

[30]  Professor Sherman was citing to *Sullivan v. Chase Investment Services of Boston, Inc.*, 79 F.R.D. 246 (N.D. Cal. 1978), which found that excluding certain claims (even those arising from the same factual predicate so as to raise claim preclusion risk) may be "the proper course" if reasonably necessary to not risk class certification on the asserted claims.   *Sullivan* was a case in which the wrong involved the sale of securities in which the class claims pursued were essentially nondisclosure or fraud-like claims easier of class treatment, while the   arguably "trimmed" claims were suitability claims associated with the sale of the same securities--claims highly dependent upon the differing investment needs and acumen of individual claimants and thus less amenable to class treatment. Such a class-amenable assessment of the nondisclosure/shorting claims in *Lusk* compared to the individualized non-marketing claims in *Moore*, would seemingly yield a similar analysis.

the plaintiff's Rule 23 adequacy.  However, on appeal, the 5th Circuit remanded because the district court did not "weigh the value of the potentially waived [excluded] claim against the strategic value of the waiver    the value of proceeding as a class . . . ."  The court said that on remand the district court can consider the "risk of preclusion [and] the value of the potentially waived claims," and that the district court

> "has a number of options at its disposal . . . <u>depending on how the case develops</u>, including but not limited to concluding the risk of preclusion is too great and declining to certify the class; certifying the class as is and then tailoring the notice and opt-out procedure to alert the class to the risk of preclusion; concluding that the benefits to proceeding as a class outweigh the risks of future preclusion and certifying the class as is; or defining the class in a way to exclude unnamed plaintiffs who may quarrel with the condition adjustment." (emphasis added)

Here, there are few reasons to reach Defendants' adequacy concern before the time when class certification is before Judge Schiltz and the Court "depending on how the case develops" can assess a number of related and presently unknown factors, such as: (a) whether the class certification is or is not in respect to a "settlement class;" (b) whether unrelated to the claim-trimming issue, should a class be certified--as if the class is not, for other reasons, amenable to certification, the claim-trimming adequacy issue is irrelevant; (c) the number of potential *Lusk* class members who have non-marketing claims—to assess the degree of risk from future preclusion; (d) the pros and cons of a class which excludes non-marketing claims or those having non-marketing claims;[31] (e) the use of subclasses;[32] (f) the potential content of the class notice and its discussion of preclusion issues;[33] (g) a weighing as in *Slade, supra,* of whether the "benefits of proceeding as a class is greater than the risk of preclusion; (h) any re-assessment of the claim

---

[31] Rule 23(c)(1)(B) and (c)(4).

[32] Rule 23(c)(5).

[33] Rule 23(c)(2)(B)(vii)—noting that such an issue ("the binding effect of a class judgment") is to be a component of class notice.  Again, of course, any person opting out of the *Lusk* class would not be bound by any judgment in *Lusk*.  See n. 9, *supra*.  It may be unlikely, however, that putative class members would opt out, as a no-preclusion ruling here would likely bring considerable, while perhaps not total, comfort that, assuming timely pursued, a *Lusk* class member's non-marketing claim would not be precluded by any judgment in *Lusk*.  See n. 27, *supra*, and accompanying text, and discussion at 11-18, *supra*.

preclusion issue and the issues described by Professor Sherman and in *Slade*; and (h) any other issues arising from class discovery not now known.[34]

In short, not only are the excluded non-marketing not subject to claim preclusion, as such non-marketing claims are not the same cause of action as the included nondisclosure/shorting claims, there is no reason to decide the Rule 23 adequacy issue at this time, and many reasons not to do so.

## IV.   CONSOLIDATION

Given the above discussion, many of the issues concerning preclusion and claim-splitting, as they impact consolidation, have been concluded, leaving practical issues respecting efficiencies, duplicitous proceedings, inconsistent rulings, etc. As between the *Lusk* and *Moore* cases, about which consolidation is being considered, the factors recognized in the caselaw (most not surprisingly), are:

a.  Overlap or differences in facts/evidence to be discovered and to underpin liability and damages at trial;

b.  Overlap or differences in predominance of issues or facts;

c.  Overlap or differences in discovery needs;

d.  Overlap or differences in parties;

e.  Overlap or differences in counsel to the parties;

f.  Overlap or differences in trial readiness, stage of pretrial proceedings and delay;

g.  Overlap or differences in legal issues   pretrial and/or trial;

---

[34]  Also, these claim-trimming adequacy issues are not resolved by an all-purpose consolidation, as the issue of whether Plaintiffs seek a class for only the nondisclosure/shorting claims or also seek a class for the non-marketing claims, would continue to exist. See Rule 23(c)(1)(B). Further are the questions under *Hall v Hall,* 548 U.S. 1 (2018), as to whether Rule 42 consolidations can result in a complete merger of two consolidated cases: "What our decision does mean is that constituent cases retain their separate identities at least to the extent that a final decision in one is immediately appealable by the losing party." Seemingly a merger of two cases into one cannot deprive a party of either case from such party's substantive or procedural rights, which is reflected in the above Report and Recommendation.

h.  Rights of the parties, denial of due process right to prosecute separate case, not extinguishing any party's substantive rights to the party's claims or defenses;

i.  Prejudice relative to the use and presentation of evidence;

j.  Juror confusion;

k.  Judicial resources and economy/efficiencies;

l.  Effects on finality of judgments and rights to post-trial motions, appeals, FRCP Rule 54, and the like, and questions of merger and separateness.

Generally, *Moore's Federal Practice Civil*, sections 42.10 and 42.13.

Given that responsive pleadings to the existing *Moore* and *Lusk* complaints have not been served, there is some uncertainty as to the degree to which the facts and issues, particularly the likely contested facts and issues, are or are not common between the cases. However, it seems that, given the allegations of the two pending complaints, many consolidation factors are known.  Sadly, the factors do not always cut the same way:

1.  The lawyers for all Plaintiffs are the same in both cases, and the lawyers for all Defendants are the same in both cases, such that obvious duplication and cost avoidance comes from some degree of consolidation. Additionally, here there are no difficult consolidation issues such as identifying lead counsel.

2.  The District Judge, the Magistrate Judge and the Rule 53 Master, and the roles of each, are the same and in common as between *Lusk* and *Moore*.

3.  The Plaintiffs in *Lusk* are different than the Plaintiffs in *Moore,* and the causes of action and factual predicates, as discussed above, are different.

4.  The Defendants in both cases are the same.

5.  There are generally common contractual relationships between the parties (albeit different Plaintiffs) in both cases, namely produce grower Plaintiffs having agreements with Defendants for the marketing and transporting of crops. However, the nucleus of operative facts, which are likely to be central to and predominate in the trial of each case, are different as to both liability and damages, as discussed at pp. 14 to 16, *supra.*   However, the degree that certain duties may derive from comparable contracts and PACA have some

31

common (and also varied) legal issues, even though the claimed breaches of such duties are different between the cases.

6.  Some witnesses, it is anticipated, will be common between the cases:  One can assume that there are past or current employees of Defendants who will be witnesses in respect to the relationships between grower Plaintiffs and Defendants, management overseeing these relationships, employees actually engaged in Defendants' relationships with grower Plaintiffs, financial or accounting employees involved in the accounting and financial relationships between the parties, and employees knowledgeable as to Defendants' ESI. However, Plaintiffs (four in *Lusk* and 13 in *Moore*) and most of their witnesses will be materially different in discovery and trial as between the cases, and the body of operative evidence in the trial of the cases will likely be quite different.  See discussion at pp. 14 to 16, *supra.*

7.  Certain common disputes and related rulings could be involved pre-trial, such as ESI issues relative to Defendants' ESI structures, lawyer client or work product privilege issues in respect to document requests in both cases; common scheduling concerns (albeit potentially different trial-readiness between the cases), summary judgment motions concerning the existence fiduciary duties associated with the general contractual relationships between the parties, and application of PACA about which inconsistent rulings or adjudications as to like issues should be avoided, and about which common lawyers, briefing, hearings and argument will take place.

In considering all of the factors, and appreciating the discretion afforded trial courts in making Rule 42 determinations, it seems that, despite some mixed influences, relatively full consolidation for pre-trial purposes in accordance with the above order makes sense.  Here are among the anticipated items:[35] (a) certain scheduling and related rulings in common between the cases and counsel: (b) certain discovery, witness, documents, and ESI activities and related rulings in common between the cases and counsel; (c) existing consolidation and dismissal motions in common (claim splitting between the two cases, etc.); (d) summary judgment disputes concerning duties claimed to have arisen from contracts or a statute having some degree of common features between the cases; and (e) certain evidence, particularly testimony, and potential discovery related rulings, could have application between the two cases.

---

[35]  Some of what is anticipated is already taking place in discovery disputes, ESI, consolidation, privileges, scheduling and the like involving both cases, all the same lawyers and myself.

However, consolidation for trial and *in limine* matters seems unwarranted, at least on the basis of what is known today.[36]  See discussion in *Moore's Federal Practice Civil*, *supra* at section 42.13.  The factor of material trial evidence differences, as well as related trial time and jury confusion, given the different alleged wrongs and supporting or refuting facts, cuts against a trial consolidation on what is presently known.  See discussion at pp. 13-16, *supra*.  Also, while presently the two cases are not at materially different stages of pre-trial development, lengthy class certification processes in *Lusk* could render the trial readiness of *Lusk* considerably later than the trial readiness of *Moore*, and thus the competing rights claimed by the *Moore* plaintiffs to not be unduly delayed may cut against a trial consolidation on what is known today.  The many issues concerning prejudice to the parties from the admission of evidence and testimony on the nondisclosure/shorting claims which include allegations sounding in dishonesty that could prejudice the Defendants in the trial of the non-marketing claims, etc., also may cut against a trial consolidation on what is known today.  Jury confusion and understanding also seems more likely if these two different wrongs are presented before the same panel.  And given the materially different facts, evidence and witnesses prominently at issue in respect to the *Lusk* nondisclosure/shorting claims compared to the *Moore* non-marketing claims, there does not appear on what is known today to be material saving of time or avoidance of material duplication by a common trial.  *Id*.  And finally, any class certification in *Lusk* would involve a new set of trial differences between the cases.

However, it is recognized that there could and likely will be some overlap witnesses testifying on the Defendants' side and perhaps some potential overlap in experts concerning produce marketability, freight and the like.  Accordingly, this order should be without prejudice, as it must be, to further trial consolidation determinations when there is better visibility into rulings on dispositive motions and class certification, all when Judge Schiltz is thereby better able to appreciate the entire landscape of the trial issues, trial readiness

---

[36]  As discussed earlier, there is question as to the degree to which even an "all purpose" consolidation fully merges the cases into one.  See *Hall v. Hall*, 548 U.S. 1 (2018) and n. 34, *supra*.  Regardless, given the different alleged wrongs and factual predicates for liability between *Lusk* and *Moore*, and the different parties where no plaintiff in *Lusk* is a plaintiff in *Moore*, and vice versa, the cases need to keep their separate identity relative to many substantive rights of the parties.  Id.

between the cases, the degree of prejudice to either party which could come from trial consolidation, class certification trial questions, questions concerning a common trial with two jury panels, etc.

Finally, a consolidation order should not ignore the degree to which the parties and counsel assume and take heed that discovery and rulings may be useable and/or binding in both cases    particularly when the parties in both cases are represented by the same counsel. Accordingly,  to assure no misplaced reliance of the parties and counsel, to assure counsel's full attention to the potential common uses of discovered evidence and pre-trial rulings between the cases, and to assure the Court's fullest future discretion about the joinder of any issues for trial, it is sensible for the parties to assume that the evidence "use" default in connection with responses to discovery and deposition testimony will be that such evidence, as relevant and permitted by the Rules of Evidence, will be useable in both cases, while leaving open the possibility that such use could be restricted or limited by Judge Schiltz in connection with in *limine* rulings should such use be found contrary to the Rules of Evidence, more prejudicial than probative, and any other *de novo* determination by the Court.  It also makes sense, for the same reasons, that all appreciate that the "law of the case" default in connection with other pre-trial rulings on disputes will be, as applicable, the law of the cases in both *Lusk* and *Moore*, with an understanding that Judge Schiltz, in respect to issues of preclusion, fairness, preventing prejudice or other considerations, could determine *de novo* otherwise as any such motions are scheduled, heard and decided.[37]  In short, this fulsome consolidation for pretrial purposes assures that the parties and counsel will be aware of the potential use and application of discovered evidence and rulings in both cases, without prejudice however to Judge Schiltz making, *de novo,* other determinations.

RBS

---

[37]  This is not to suggest there will or will not be issue preclusion on any pretrial ruling, which would be decided in respect to any related motion for preclusion after a claimed identical issue had been decided, or by Judge Schiltz should he wish to limit the preclusive effect of such ruling. See n. 20, *supra.*