**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| DAVID MOORE d/b/a MOORE FAMILY FARMS, *et al.*, <br><br>　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>C.H. ROBINSON WORLDWIDE, INC. *et al.*,<br><br>　　　　　　　　　Defendants. | Case No.: 20-cv-252 (PJS/HB)<br>Rule 53 Master |
| JMR FARMS, INC, et al, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>C.H. ROBINSON WORLDWIDE, INC. *et al.*,<br><br>　　　　　　　　　Defendants. | Case No.: 20-cv-879 (PJS/HB)<br>Rule 53 Master |

**ORDER ON MOTIONS TO AMEND**

Plaintiffs in both of the above matters have made motions to amend their pending complaints. Extensive briefing has been submitted by all the parties, along with the redlined Third Amended Complaint ("TAC") in *David Moore, et. al. v. C.H. Robinson Worldwide, Inc.*, ("*Moore*"), and along with the redlined First Amended Complaint ("FAC") in *JMR Farms, Inc. et. al. v. C.H. Robinson Worldwide, Inc.* ("*JMR*"). A Zoom hearing was held on September 24, 2020, at which plaintiffs in both *Moore* and *JMR* were represented by Phil Stern and Craig Stokes, while defendants in both *Moore* and *JMR* were represented by Patrick Rooney, Peter Wozniak, Adina Florea, and Bradley Hutter. After the hearing, additional submissions were provided by the

1

parties. On all the submissions of the parties, argument of counsel and the files and proceedings herein, the undersigned makes the following:

## ORDER

1. Plaintiffs' amendments reflecting the deletion and addition of parties consented to by defendants are allowed under Rule 15(a)(2), and are not the subject of this order or memorandum;

2. That *JMR* plaintiffs' motion for leave to amend its complaint and file the FAC to assert punitive damage allegations and a punitive damage claim, is denied, with leave for plaintiffs to move to amend their complaint no later than the fact discovery deadline;

3. That *Moore* plaintiffs' motion for leave to amend their complaint and file the redlined TAC is denied as to: TAC paragraph 30.06; the last 12 to 14 words beginning with the word "and" of TAC paragraph 60 through 69 inclusive; TAC paragraph 73; TAC paragraph 78.08; the last 12 words of TAC paragraph 94.05; and the redlined 17 words of TAC paragraph 106. Leave to amend in respect to the other redlined TAC provisions is granted; and

4. The following Memorandum is a part of this Report and Recommendation.

Dated: October 16, 2020.

*Richard B. Solum*
Rule 53 Master

## **Motion to Amend to Assert Punitive Damages in**
## **JMR Farms, Inc. et al, v. C.H. Robinson Worldwide, Inc.**

### **I.   Introduction**

In the above *JMR Farms, Inc. v. C.H. Robinson Worldwide, Inc.* ("*JMR*"), Plaintiffs seek leave to file their proposed and submitted redlined First Amended Complaint ("FAC") to include a punitive damage claim. *JMR* plaintiffs, essentially arguing that their breach of fiduciary duty claim supports punitive damages, largely tack onto their existing fiduciary duty allegations, a handful of allegations which conclude that defendants acted in "deliberate disregard for the rights or safety of others," quoting the operative standard of Minnesota's punitive damage statute, section 549.20(1). Plaintiffs assert that this is sufficient to entitle them leave to amend under the liberal pleading rule of FRCP 15(a).

Defendants object to the amendment, essentially arguing (1) that Rule 15(a) is not the standard by which plaintiffs' amendment should be measured  contending that the standard is the "gatekeeper" provisions of Minnesota Statute section 549.191, and (2) that even if measured by Rule 15(a), plaintiffs' amending allegations do not support a punitive damage claim. There is no dispute that if section 549.191 is the standard  a standard requiring the submission of affidavits which have not been attendant plaintiffs' motion, leave to amend cannot be granted.

### **II.    Motions in *JMR* to Amend to Allege Punitive Damages**

####   **A.  Introduction: Rule 15(a) or Section 549.191**

Plainly the courts in this District have not been in agreement as to whether leave to allow punitive damage amendments should be governed by Federal Rule of Civil procedure 15(a), or the "gatekeeper" provisions of Minnesota Statute section 549.191. Having researched a number of cases in this District with differing results, the focus has been on two decisions which are both recent and which seem to have most thoroughly analyzed the many issues, namely Magistrate Judge Brisbois's decision in *Inline Packaging, LlC, v. Graphic Packaging International, LLC*, Court File Number 15-cv-3183 (ADM/LIB), and Judge Schiltz's decision (affirming Magistrate Judge Rau) in *Selective Insurance Company of South Carolina*

3

*v. Amit Sela,* 353 F. Supp. 3d 847 (D. Minn. 2018).  These two cases reach different results, the former concluding that leave to grant a punitive damage amendment should be determined under the gatekeeper statute section 549.191, while the latter, dealing with the nearly identical gatekeeper statute (for bringing bad faith insurance claims) of Minnesota Statute section 604.18, concluding that leave to grant the amendment should be determined under Federal Rule 15(a).[1]  I have determined that the decision here must be guided by *Selective,* both because Judge Schiltz may be the ultimate decision-maker should either side object to and seek review of this order,[2] and because, having studied *Selective* and the relationship between the gatekeeper statutes at issue in *Selective* and here, it seems implausible that any decision by Judge Schiltz here would not be aligned with his reasoning in *Selective*.

---

[1]  As for timing in moving for a punitive damage amendment, litigants in this District would be understandably uncertain, as motions under Rule 15 are typically early in pre-trial proceedings, while a motion under section 549.191, where punitive damage "must" not be plead until a motion for leave accompanied by affidavits (leave not "freely given" as under Rule 15), often awaits related discovery. In *Target Corp. v. LCH Pavement Consultants, LLC,* 960 F. Supp.2d 999, 1006 (D. Minn. 2013), the court noted as to scheduling orders where punitive damage amendments were analyzed under section 549.191, "The purpose of setting the punitive damages motion toward the end of fact discovery is to allow a party adequate time to gather evidence in support of punitive damages for the claims that are already pending in the case."  Here, Magistrate Judge Bowbeer's earlier scheduling order required all motions to amend, expressly including punitive damage amendments, be made early. Moreover, my scheduling order similarly provided that motions to amend be made by September 1, 2020, a date prior to any significant discovery.  Additionally, litigants may also assume earlier punitive damage motions under Rule 15 would be the practice in cases assigned to Judge Schiltz, given his decision in *Selective* which seemingly foretold the application of Rule 15 rather than section 549.191.  (Also, Magistrate Judge Bowbeer's decision in *Shank v Carleton College,* 16-cv-1154 (PJS/HB), held that punitive damage amendments be assessed under Rule 15, not the gatekeeper provisions of section 549.191.) In short, it is understandable that *JMR* plaintiffs here have made the motion for a punitive damage amendment at this time—even though such timing seemingly may not permit the discovery necessary to plead some of the required specifics or gather related affidavits, as discussed below. Perhaps concerned about this conundrum, *JMR* plaintiffs asserted a plea for punitive damages in the original "Wherefore" provisions of the existing complaint, and of course have advanced their instant motion in accordance with the existing scheduling order.

[2]  As to the decision here, a motion for leave to amend a pleading is non-dispositive--a magistrate judge's ruling to be reversed if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  However, when a magistrate judge denies leave to amend a pleading as futile, the magistrate judge's ruling is reviewed *de novo. See, e.g., Magee v. Trs. of Hamline Univ.*, 957 F. Supp. 2d 1047, 1062 (D. Minn. 2013).  I am here denying the motion for reasons other than futility (or implausibility), as discussed below.

B.  *Selective Insurance Company of South Carolina v. Amit Sela*

In *Selective*, Judge Schiltz examined 8th Circuit authority concerning the *Erie v. Tompkins* issue of whether any law governing pleading standards is procedural and thus Federal Rules of Procedure must control over any competing state law. Judge Schiltz first noted that the 8th Circuit had made clear that in cases where jurisdiction is based on diversity, pleading standards are governed by Federal Rules, not state laws   even in respect to pleading state claims:[3]

> As first-year law students are taught—if their Civil Procedure professor is brave enough to cover *Erie Railroad Co. v. Tompkins* , 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) — "federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.* , 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). Pleading standards are generally viewed as procedural, and thus federal courts generally apply federal pleading rules regardless of whether a claim arises under federal or state law. *See, e.g., Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 548 (8th Cir. 2013) ("We apply federal pleading standards ... to the state substantive law to determine if a complaint makes out a claim under state law."); *Council Tower Ass'n v. Axis Specialty Ins. Co.* , 630 F.3d 725, 730 (8th Cir. 2011) (applying "federal pleadings standards" and "Missouri substantive law" to review a motion to dismiss a state tort claim); *Johnson v. Hondo, Inc.* , 125 F.3d 408, 417 (7th Cir. 1997) ("[I]t is rudimentary that pleading requirements in the federal courts 'are governed by the federal rules and not by the practice of the courts in the state in which the federal court happens to be sitting.' " (citation omitted) ).

If there was any question that Judge Schiltz's views in *Selective* favoring Rule 15 over the state gatekeeper statute section 604.18, would govern here in respect to section 549.191, in *Select*ive Judge Schiltz expressly equates section 549.191 and 604.18:

> Notwithstanding the general rule, this District has long applied <u>*state* pleading standards to claims for punitive damages</u> under Minnesota law. *See, e.g.*, *In re Levaquin Prods. Liab. Litig.*, No. 08-CV-5743 (JRT), 2010 WL 4867588, at *2-3 (D. Minn. Nov. 23, 2010) (noting that this District has applied Minn. Stat. § 549.191 to claims for punitive damages); *see also In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, No. 15-CV-2666 (JNE/FLN), 2017 WL 5187832, at *1 n.1 (D. Minn. July 27, 2017) ("The Judges and Magistrate Judges of this Court have consistently applied the <u>Minnesota punitive damage statute</u> in diversity cases where state law supplies the rule of decision."). This District has <u>also consistently applied *state* pleading standards</u> to claims of bad-faith denial of insurance benefits under Minnesota law. *See, e.g.*, *Friedberg v. Chubb & Son, Inc.*, 800 F. Supp. 2d 1020, 1024-25 (D. Minn. 2011) (applying § 604.18, subd. 4(a)); *Martin v. State Farm Fire & Cas. Co.*, 826 F. Supp. 2d 1133 (D. Minn. 2011) (same) (emphasis added).

---

[3] Here jurisdiction over plaintiffs' breach of fiduciary duty or any potential punitive damage claim is based on federal question supplemental jurisdiction, and thus a greater federal law nexus exists here than in *Selective.*  Of course, here the underlying cause of action on which punitive damages are claimed, is a state common law claim for breach of fiduciary duty.

5

> In the past, the undersigned has acted consistently with the District's practice with respect to claims for punitive damages. *See, e.g.*, *Kapps v. Biosense Webster, Inc.*, 813 F. Supp. 2d 1128, 1165 (D. Minn. 2011) (applying Minn. Stat. § 549.191). (Until today, the undersigned has not had to decide whether to act consistently with the District's practice with respect to bad-faith claims.) But two things about the District's practice have nevertheless been troubling. First, as noted, the District's practice with respect to both punitive-damages and bad-faith claims seems inconsistent with the general rule that federal pleading rules apply in federal court, even to claims that arise under state law. And second, the District's practice—which, in the case of punitive-damages claims, dates back more than 30 years—seem to have developed without a great deal of analysis. The Court has thus decided to look at the issue anew . . . ." (emphasis added)

Judge Schiltz treated the gatekeeping section 604.18 as a pleading standard, and thus there is no question, as expressly noted by Judge Schiltz above, that the nearly identical gatekeeping section 549.191 would be so treated.

Next, Judge Schiltz went on to examine the analysis in the Supreme Court's decision in *Shady Grove Orthopedic Associates., P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), noting that *Shady Grove* instructs:

> "[a] federal court exercising diversity jurisdiction should not apply a state law or rule if (1) a Federal Rule of Civil Procedure 'answer[s] the same question' as the state law or rule and (2) the Federal Rule does not violate the Rules Enabling Act." *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1333 (D.C. Cir. 2015) (quoting *Shady Grove*, 559 U.S. at 398-99). Courts need not "wade into *Erie*'s murky waters" when the Federal Rule satisfies both requirements. *Shady Grove*, 559 U.S. at 398. The question in this case, then, is whether the Federal Rules conflict with § 604.18 by "answering the same question" in a different way—and, if so, whether application of the Federal Rules would violate the Rules Enabling Act. (emphasis added)

There is little question here, as in *Selective*, that section 549.191 answers the same question as Rule 15(a), namely the "procedural right" to advance or plead a claim. And there is little question here, as in *Selective*, that such question is answered in a different way. In *Selective*, Judge Schiltz noted Federal Rule 8 provides that a pleader "must" include a statement of the claim and a demand for the relief sought, and that Rule 15 provides that a pleader may freely amend within a certain timeframe, and may thereafter amend with leave of court to be "freely given . . . ." He then noted that section 604.18, as does section 549.191 here, provides that a pleader "must not" contain certain statements of a claim and certain demands for relief, and that under section 604.18, as under section 549.191 here, an amendment is not "freely given," but allowed only upon affidavits and a related finding of

6

the court. That this analysis would be comparable between sections 604.18 and 549.191, seems clear from a comparison of the two nearly identical gatekeeper provisions:

> <u>604.18(4) Claim for taxable costs.</u> Upon commencement of a civil action by an insured against an insurer, the <u>complaint must not</u> seek a recovery under this section. <u>After filing the suit</u>, a party may make a motion to amend the pleadings to claim recovery of taxable costs under this section. The motion <u>must allege the applicable legal basis</u> under this section for awarding taxable costs under this section, and <u>must be accompanied by one or more affidavits showing the factual basis</u> for the motion. The motion may be opposed by the submission of one or more affidavits showing there is no factual basis for the motion. At the hearing, <u>if the court finds prima facie evidence</u> in support of the motion, the court may grant the moving party permission to amend the pleadings to claim taxable costs under this section.  (emphasis added)
>
>    Compared to:
>
> <u>549.191 Claim for punitive damages</u>. Upon commencement of a civil action, the <u>complaint must not</u> seek punitive damages. <u>After filing the suit</u> a party may make a motion to amend the pleadings to claim punitive damages. The motion <u>must allege the applicable legal basis</u> under section 549.20 or other law for awarding punitive damages in the action and <u>must be accompanied by one or more affidavits showing the factual basis</u> for the claim.  At the hearing on the motion, <u>if the court finds prima facie evidence </u>in support of the motion, the court shall grant the moving party permission to amend the pleadings to claim punitive damages. For purposes of tolling the statute of limitations, pleadings amended under this section relate back to the time the action was commenced.  (emphasis added)

Since the same question is answered differently between the pleading standard of the Federal Rules and the state gatekeeper statute, *Selective* turned to inquiries under the Rules Enabling Act, beginning with whether Federal Rules 8 and 15, and particularly Rule 15, "really regulated procedure," concluding that these Rules did. Thus, Judge Schiltz's determination in *Selective* as to Federal Rule 15 would be the same determination made as to Rule 15 here.

Judge Schiltz then went to the next prong of the Enabling Act analysis, namely whether there is "little doubt that a state substantive right would be abridged through the application of the Federal Rule . . . ." *Selective* concluded that the answer to this question was "no," which seems obvious as the  pleader's ultimate  right to proceed with a substantive bad faith claim having factual support, whether pled early under a Rule 8 or Rule 15 standard, or later under a section 604.18 standard, is the same  the ultimate right to maintain the substantive remedy is not abridged.  This analysis would be identical with respect to section 549.191, as whether leave to amend is judged under the Rule 15 standard or under the

7

section 549.191 standard, the pleader's ultimate right to maintain a factually supported punitive damage remedy is not abridged.

In conclusion, there is no meaningful difference in the questions presented here and the questions decided in *Selective*, and accordingly Judge Schiltz's related reasoning has been applied here.[4]  As noted below, however, this determination is largely inconsequential here, as the above order denies plaintiffs' motion to amend.

### C. Plaintiffs' motion fails under either section 549.191 or Rule 15(a).

#### 1. Introduction

While it is not plausible that Judge Schiltz's analysis of the issues surrounding section 604.18 would not be comparable to the analysis surrounding section 549.191, here this debate between Rule 15 and section 549.191 is of little consequence, as the motion to amend should be denied under either analysis.  As noted above, there is no dispute that the motion must be denied if decided under section 549.191, as there have been no affidavits presented as the section 549.191 gatekeeper provision requires.  The amendments also fail under Rule 15(a).

Before proceeding, it should be noted that the denial of plaintiffs' motion to amend is not based on defendants' futility or implausibility claims, but rather on a routine failure of plaintiffs' FAC to state a punitive damage claim.  Defendants, noting plaintiffs' view that punitive damages are based on breaches of fiduciary duty, contend that plaintiffs' allegations fail to make a plausible breach of fiduciary duty claim.  While admittedly plaintiffs assert that a breach of fiduciary duty can support a claim for punitive damages, this does not mean that plaintiffs are relying solely on the <u>existing</u> breach of fiduciary allegations, to which they seek to add the conclusionary amending punitive damage allegations.[5]

---

[4] One appreciates that there may be differences in the issues here and those in Shady Grove. As said in *Inline*, supra, "the type of conflict seen in *Shady Grove* (re Rule 23 versus a New York statute prohibiting a class action bringing claims for statutory penalties) is simply not present when this Court compares Rule 15 and Minnesota Statute section 549.191."

[5] Plaintiffs cite to cases in which punitive damages have been awarded in respect to breach of fiduciary causes of action.  But these cases do not stand for the proposition that allegations of a fiduciary duty breach standing alone are enough, lest essentially every claim of an intentional tort arguably would equate

8

With respect to testing an implausibility claim, we ask whether the allegations could withstand a Rule 12(b)(6) challenge, even though the time for such a direct challenge here has come and gone. When we apply such a test to plaintiffs' breach of fiduciary duty allegations, the challenge fails. First is the allegation that defendants refer to themselves as "agent" in multiple contractual locations. An agent, under Minnesota law, is often a fiduciary, as in a true agency relationship the agent acts on behalf of the principal. Our Supreme Court has said that in finding a fiduciary relationship, "agency principles are preferred by the courts [if one] can be labeled an agent of [another], it would be impossible to characterize their dealings as arms' length, and he would owe a fiduciary duty of full disclosure." *PMH Properties v. Nichols*, 263 N.W. 2d 799, 801 (1978).[6] The court held that "the fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to so act."

---

to a punitive damage claim. For instance, plaintiffs cite *McGrath v. Mico Inc.,* 2012 WL 6097116 (Minn. Ct. App. Dec. 10, 2012), for the proposition that a breach of fiduciary duty claim will support punitive damages. But if one reads the trial court's verdict in which punitive damages were awarded in *Mico*, the findings specifically underpinning punitive damages were other than and went well beyond those supporting the breach of fiduciary duty. Allegations of breach of fiduciary duty with only conclusionary appendages that the breach was a "deliberate disregard of the rights of others," do not seem adequate, nor do the cases cited by plaintiffs say so. Presumably plaintiffs appreciate this, as in their FAC they seek to amend the <u>existing</u> breach of fiduciary duty allegations by adding nine additional paragraphs.

[6] Defendants claim that plaintiffs' fiduciary duty allegations fail because there can be no breach of fiduciary duty between parties contracting at arms' length and on equal footing, a claim somewhat at odds with the language of *PMH*. While it may be that there can be no breach of fiduciary duty where the breach is alleged to have been <u>in the contracting itself</u>, the cases do not hold that a fiduciary relationship can never <u>be contractually created</u> between parties of equal bargaining power contracting at arms' length. (See the1931 Minnesota Supreme Court case of *Klemme v. Long*, 184 Minn 97 (1931), the source from which the case using such language derives.) Of course, if it was the case that no fiduciary relationship can be established between parties through a contract created at arms' length, we would often have no fiduciary duty established in partnership agreement, brokerage agreements, lawyer-client agreements, guardian-ward agreements, trustee-beneficiary agreements, and many others. In any event, plaintiffs here do not contend that there was a breach in their contracting with defendants, but that a fiduciary relationship was created in respect to their contractual undertakings, the related duties of which were later breached by post-contracting acts and omissions of defendants. Finally, defendants' contention that the plaintiff growers were on equal footing and contracted at arms' length is an assertion not a given in the pleadings—an assertion that may be contested.. *See Arias v. Am. Family Mut. Ins.,* No. 13-cv-1681 (PJS/JJG), 2013 WL 12145854, at *2 (D. Minn. Oct. 28, 2013) (Graham, Mag. J.) ("[n o matters outside the pleading may be considered" when conducting a Rules 12(b)(6) analysis).

9

Id. at 802.[7]   While labeling alone seemingly may not be enough to create an agency and fiduciary relationship, this term used in contracts drafted by defendants (large and legally sophisticated business enterprises) is evidence that defendants themselves viewed their relationship with the growers as one of agency.

Beyond the allegation of contractual "agent" identifications, there are many allegations, which if taken as true, support a fiduciary relationship between the parties, either one of true agency in which the defendants agreed to act in behalf of plaintiff growers and the growers so consented, or a fiduciary in which plaintiffs reposed trust and confidence in defendants in respect to their yearly crops and defendants knew the same.[8] The existing allegations support the following: (1) that defendants' Agreements provide that the plaintiff growers appoint defendants as "exclusive" agent for the sale of growers' crops; (2) that the transactions are consignment transactions in which plaintiff growers assign to defendants exclusively the growers' crops for the subject growing season; (3) that plaintiff growers manifested their consent that defendants would act in growers' behalf; (4) that title to and risk of loss is retained by plaintiff growers when defendants have possession and control of the growers' crops; (5) that the defendants rather than the plaintiff growers would negotiate the price plaintiff growers would receive for their crops; (6) that defendants had control of the times when, the places where, the parties to whom, and the methods and prices for which, plaintiff growers' crops would be sold; (7) that defendants would collect the sale proceeds from plaintiffs' growers crops and defendants would pay themselves from such amount defendants' commission fee and other expenses; (8) that defendants would arrange for the transportation of plaintiff growers' crops; and (9) that defendants would report the elements of the transactions to plaintiff growers.  In short, plaintiffs existing allegations

---

[7] Of interest, the *PMH* court, in respect to a fiduciary relationship, said, " . . . we believe that ample evidence was introduced from which the jury could have concluded that respondent Nichols agreed to manage and resell the apartments for PMH, thereby becoming its agent . . . ."  This is the relationship largely claimed by plaintiff growers whose <u>existing</u> allegations assert that defendants agreed to take control of and sell the growers' crops, managing the pricing, collection of sale proceeds, transportation, accounting, etc.

[8] While the Minnesota Jury Instruction Guide does not offer a one size fits all for the existence of a fiduciary relationship or duty, its opening comment states, "Under Minnesota common law, a fiduciary relationship exists when one party places its trust and confidence in the other." See *Minnesota CIVJIG 23.10 Fiduciary Duty*.

assert a relationship in which plaintiff growers and defendants agreed that defendants as growers' exclusive "agent" would act in behalf of the growers' to control, possess, transport, price, sell, and receive/distribute sales proceeds, of plaintiffs' crops, while plaintiffs retained the related risks. Under Minnesota law, these allegations, if true, would support a finding that plaintiff growers reposed trust and confidence in defendants to act in the growers' behalf in the matters relating to the sale of the growers' crops.  Thus, had defendants moved to dismiss plaintiffs' fiduciary duty claims because their existing allegations failed to state a claim, the motion would have been denied, and thus defendants' claim that plaintiffs' <u>existing</u> fiduciary duty allegations fail or are implausible, cannot be sustained.  Likely defendants appreciated such a result, as they made no related Rule 12(b)(6) motion.[9]

### 2. Master and Principal—Section 549.20(2)

The Minnesota punitive damage law is found in Minnesota Statutes, section 549.20, which at subdivision 2 headed "Master and Principal," provides:

> Punitive damages can properly be awarded against a master or principal because of an act done by an agent only if: (1) the principal authorized the doing and the manner of the act; (2) the agent was unfit and the principal deliberately disregarded a high probability that the agent was unfit; (3) the agent was employed in a managerial capacity with authority to establish policy and make planning level decisions for the principal and was acting in the scope of that employment; or (4) the principal or a managerial agent of the principal, described in clause (3), ratified or approved the act while knowing of its character and probable consequences.

Plaintiffs have devoted little attention to the above provision, perhaps assuming as they seem to argue (1) that the acts of an employee of defendants if done within the scope of the employees' employment, are acts for which the defendants would be liable for punitive damages   essentially that defendants would be vicariously liable for punitive damages, or (2) that acts or omissions which are the "practices" of defendants give rise to defendants' liability for punitive damages.  But the statute is otherwise, and it would appear

---

[9] I am assuming without deciding that if the breach of fiduciary duty allegations are insufficient to state a claim, that the amending punitive damage allegations would not be plausible or that such allegations would be futile.  I have not assessed the entirety of the FAC to determine whether the amending punitive damage allegations are sufficient to state a punitive damage claim irrespective of the adequacy of the breach of fiduciary duty allegations—allegations which expressly incorporate all other allegations of the FAC. Because I have found, for purposes of implausibility or futility, that the existing breach of fiduciary duty allegations would withstand a motion to dismiss for failure to state a claim, there is no need to so assess the entirety of the FAC.

unlikely, or at least questionable, whether defendants as employers of human employees which engaged in the acts or omissions claimed to support punitive damages, are liable except upon showing one or more elements of the above section 549.20(2).  So the question is whether the allegations of the FAC state a punitive damage claim against defendants absent allegations supporting one or more such elements.

After a careful review of the FAC, this seems a close call. First, plaintiffs allege that defendants had a corporate culture of ethics and honesty which was not abided in respect to some of the acts or omissions allegedly constituting the deliberate disregard.  But these allegations seem to cut against the requisites of section 549.20(2).  However, at paragraph 212 of the FAC, it is alleged that a "<u>supervising</u> employee conducted an internal audit . . . to verify the extent of freight topping and freight topping occurred for all three of the selected growers." (emphasis added)  See also paragraph 224. These allegations seemingly claim that a management level employee knew, and given the other allegations, that the claimed wrongful conduct continued.  Notably, however, the allegations do not provide any information as to whether the "supervisory" employee meets the requisites of section 549.20 (2)(3), namely "authority to establish policy and make planning level decisions."

Moving on, paragraphs 220 and 221 of the FAC allege that defendants' accountings, facilitated by two sets of books, concealed the freight topping, seemingly alleging acts which would have been part of defendants' corporate practices or policies and thus imputed to defendants other than vicariously. And at paragraph 224 of the FAC, plaintiffs allege that the wrongdoing was part of the defendants' "business model," again seemingly alleging acts which would have been part of defendants' corporate practices or policies and thus perhaps imputed to defendants. It seems relatively clear that ordinary vicarious liability is not a sufficient basis to support punitive damages against an employer absent one or more elements of section 549.20(2).  It may be uncertain whether acts such as keeping of accounting records are acts of the employer relative to its practices or policies, or whether defendants (principal or master) "authorized" the same.  While admittedly discovery may be necessary to understand some of these required elements, at present the amending allegations of the FAC are inadequate in linking these bookkeeping or accounting activities with any deliberate disregard.  See e.g. *Doe YZ v. Shattuck-St. Mary's Sch.*, 214 F. Supp. 3d 763, 792-93 (D. Minn. 2016)(ordinary imputation not applicable in punitive damage

liability without showing one or more elements of subdivision 2), and *Williams v. Rodenburg LLP,* No. 17-CV-4962 (SRN/HB), 2018 WL 5801889, at *8-9 (D. Minn. Nov. 6, 2018) (Bowbeer, Mag. J.)(vicarious liability is not enough without one or more elements of section 549.20(2)).

### 3. "The court should freely give leave when justice so requires."

Rule 15(a) inherently favors the free granting of amendments   the "court should freely give leave (to amend) when justice so requires."  In furtherance of this philosophy, the above denial of plaintiffs' motion is attendant leave to plaintiffs' making a later motion to amend   which of course may or may not be granted.  *JMR* is early in discovery, major document discovery is now occurring and few depositions have been taken.  The nature of the evidence concerning the <u>existing</u> breach of fiduciary duty, non-disclosure and wrongful shorting allegations, will largely be comparable to the nature of the evidence concerning "deliberate disregard." Moreover, a prayer for punitive and exemplary damages was asserted in the original complaint.  Thus, all have understood that the *JMR* plaintiffs have long sought to maintain a punitive damage claim.  In short, there has there been no showing, nor seeming could there be a showing, of prejudice from plaintiffs being able to seek a punitive damage amendment when discovery will permit an appreciation of whether there is or is not adequate evidence to make the specific allegations required by Section 549.20, including the master and principal provisions of subdivision 2. Indeed, permitting plaintiffs an opportunity to move in the future is largely aligned with defendants' position here that leave to amend should be pursuant to the gatekeeper provisions of section 549.191.[10]

Moreover, there is no fault on plaintiffs in making the motion at this time rather than later.  In addition to the uncertainty between the Rule 15 and the gatekeeping standard, both Magistrate Judge Bowbeer and my requirements for early amendments, as noted in n.

---

[10] I am in agreement with Judge Schiltz legal analysis in *Selective*, and agree that <u>legally</u> Rule 15(a) is the governing standard.  Nonetheless, entertaining a motion to amend after some ability for related discovery, as noted in *Target* (see n. 1 supra), could be a practical standard."  Many plaintiffs who can allege wrongdoing, may be unable to early allege the kind of detail relative to the requisites of section 549.20, particularly those "Master and Principal" elements of subd. 2. Seemingly the answer, both legally and practically, is that motions to assert punitive damages will be assessed under a Rule 15(a) standard, and can be made after some necessary discovery, as here and in *Selective.*

13

1, supra, would account for the failure to delay making the subject motion until after related discovery has taken place.

There is another important consideration originating in Judge Schiltz's *Selective* decision. In *Selective*, like here, the court determined that leave to amend would be determined under Rule 15(a) rather than the gatekeeping section 549.191. However, Judge Schiltz determined that given the likely unpredictability as to how the amendment questions would be decided, and the fact that in *Selective* the discovery was concluded so the facts which could support punitive damages were known, plaintiff was allowed to amend. Judge Schiltz noted that there was no prejudice to defendant, as the punitive damage claim could be appropriately tested by summary judgement motions. The analysis here is similar. Not only is there no prejudice to allowing plaintiffs to seek a punitive damage amendment when discovery will either support or not support related allegations, the amendment issue and any futility or implausibility can then be decided based on the evidence in the discovery record, and can be fully tested under Rule 56. Such was the result in *Selective*, and it makes comparable sense here.

### Motions for Leave to Amend (1) to assert claims for an accounting, and (2) to add additional crop years in respect to the claims of plaintiffs, in Moore, et. al., v. C. H. Robinson Worldwide, Inc., et. al. ("Moore")

### I. Motions in *Moore* to Add Claims for an Accounting

The claims in the above *"Moore"* case have been characterized as "non-marketing claims" in which *Moore* plaintiff growers claim that defendants failed in their contractual obligations to market or sell such growers' crops and thereby caused the lost value of such crops. The claims in the above "*JMR*" case have been characterized as "shorting/non-disclosure" claims in which *JMR* plaintiff growers (who are other than plaintiff growers in *Moore*) claim that defendants breached certain contractual obligations by remitting crop sale proceeds wrongly reduced by defendants' overcharges or other self-benefitting activities, and failing to disclose the same. While the precise allegations of the existing *Moore* second amended complaint ("SAC") is, as discussed below, less than clear in respect to the demarcation between the *Moore* claims and the *JMR* claims, there have been many historical assertions by plaintiffs' counsel that the *Moore* and *JMR* claims are distinct and are

underpinned by largely differing factual predicates. Such assertions were a material underpinning of my earlier Report and Recommendation to deny defendants' motions to dismiss for wrongful claim splitting   namely that *Moore* involved the <u>failure to sell crops</u> and related lost value, and JMR involved the <u>sale of crops</u> attendant shorted sale proceeds. This Report and Recommendation was approved by the Court.

Rule 15(a) of the Federal Rules of Civil Procedure provides that outside a certain time frame, a party may amend its pleading only with the opposing party's written consent or the court's leave.  Defendants do not consent to the proposed amendments to add claims for an accounting.  While Rule 15 provides that "the court should freely give leave when justice so requires,"  the law provides:

> Under the liberal amendment policy of Federal Rule of Civil Procedure 15(a), a district court's denial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving partly, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated.  *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Sanders v. Clemco Indus.,* 823 F.2d 214, 216 (8th Cir.1987).   Delay alone is not a reason in and of itself to deny leave to amend; the delay must have resulted in unfair prejudice to the party opposing amendment.  *Sanders*, 823 F.2d at 217.  "The burden of proof of prejudice is on the party opposing the amendment."  Id.

*Roberson v. Hayti Police Dep't,* 241 F. 3d 992,995 (8th Cir. 2001).

Apparently the subject "accounting" amendments seek to assure a claim in respect to not only those crops which were never <u>received</u> or picked up by defendants, and thus never sold, but also to those crops which were <u>received</u> or picked up by defendants about which one or more plaintiffs claim there have been no sales or sale proceeds.  To the extent the subject amendments go no further than this, there has been no showing of any prejudice, and seemingly defendants have as good or better knowledge than plaintiffs as to those plaintiffs' crops, if any, that defendants received but did not sell, or sold but did not remit proceeds.  Moreover, the existing SAC makes such a claim and certainly put defendants on notice that

claims are being made for crops not sold, whether defendants <u>received</u> or never <u>received</u> such crops.[11]

However, the claims for accountings respecting "sales and expenses" is another matter. Much has been made of the fact that in *JMR* the claim is in respect to defendants shorting *JMR* plaintiffs of crop sale proceeds by way of undisclosed excessive charges and other activities of defendants. Again, a material part of the analysis denying defendants' claims of wrongful claim splitting focused on the distinction between *Moore* and *JMR* respecting the claimed failure of sales in the former, and the claimed sales but shorting of proceeds in the latter. ECF 119. And much of this analysis, as the law requires, focused on the want of common trial evidence or "litigative trial unit" between the two cases, the want of common damage evidence between the two cases, as well as related doctrines of preclusion and one-way interventions. There has been no showing of any excuse for plaintiffs not earlier claiming an accounting for expenses and the like. And making such a claim at this time in the proceedings  altering the landscape on which prior motions to dismiss were made, argued and decided, is prejudicial to the defendants and the integrity of the extensive Rule 12 motion practice and related determinations now adopted by the Court and seemingly the law of the case. Accordingly, leave to allow much of the proposed TAC amendments, as provided in the above order, has been denied.[12]

---

[11] Defendants correctly point to allegations in the SAC which complain of crops left on the field and thus not sold or saleable, e.g. existing SAC paragraphs 59-62. However, there are existing allegations which describe not merely a failure to receive or pick up the subject crop, but a failure to sell, plaintiffs alleging that defendants "chose to not sell or to delay the sale of some or all" of plaintiff's crop. See existing SAC paragraphs 63 to 67. Moreover, in the ultimate counts in the SAC, the plaintiffs allege both a failure "to receive," and a failure "to market <u>products received,</u>" a failure to remit sale proceeds on reported rejected loads, and an obligation to report "the final sales prices." Existing SAC paragraphs 83.03, 83.07 and 99.05. See also existing SAC paragraph 104 in which plaintiffs allege the delay of the sale resulting in rejection by the customer—an allegation suggesting product which was received. In short, defendants were on notice that products received but not sold or about which the sales price was not reported, were part of the SAC claims. And again, defendants presumably have the knowledge of what crops it received and either sold or failed to sell.

[2] However, this denial should not be construed as an impairment of plaintiffs' right to discover the disposition of crops which were received, as the <u>existing</u> SAC, as discussed above and in n. 11, supra, makes allegations that crops were received and plaintiffs were damaged. Nor should this denial be construed as an impairment of plaintiffs' right to claim damages for the loss of crop value, whether because defendants failed to pick up or receive crops, or because defendants did pick up or receive crops which were either not sold or about which there was no remittance. What is not part of the *Moore* case

**II. Claims in Respect to Additional Years**

Three *Moore* plaintiffs also wish to amend the SAC to make claims in respect to certain crop years other than those currently plead, about which defendants object. As defendants correctly note, there has been no showing of any meaningful reason for the delay in these plaintiffs not alleging all crop years in which they were complaining, although there has been no showing of bad faith in respect to such delay. There is no suggestion that the allegations are futile. And the allegations for additional crop years and theories of recovery are no different than those existing in the SAC, namely that defendants were obligated to market or sell plaintiffs crops and failed to do so. The TAC, like the SAC, alleges the basis for the claimed obligations, the failure and harm. There has been no showing of meaningful prejudice if these amending allegations are allowed, and there has been little related discovery.[13] Finally, if in fact defendants in the limited additional crop seasons had obligations to these plaintiffs which they failed to fulfill, then an allowance is one which justice requires. Related leave has been provided in the above order.

RBS

---

however, as plaintiffs seemed to concede at the hearing, is any claimed excessiveness of any actual charges or expenses resulting in a grower's proceeds being shorted, the failure to disclose the same, any wrongful keeping of rebates, etc. These *JMR* claims are not part of *Moore*. Of course, as also discussed at the hearing, if a class is certified in *JMR*, a *Moore* plaintiff may be a class member in whose behalf "shorting" claims may be pursued.

[13] Defendants note that their internal examination was in respect to the crop years originally plead. However, there has been no showing of any meaningful prejudice in looking at the few other crop years for three plaintiffs subject to the amendments.

17