UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

DAVID MOORE, d/b/a Moore Family Farms; KEVIN RENTZ, AMANDA CALHOUN RENTZ, DENNIS BRUCE RENTZ, and KARLA JO RENTZ, d/b/a Rentz Family Farms; PHIL SANDIFER & SONS FARMS LLC; POWE FARMS MANAGEMENT LLC; GLOBAL FRESH, S.A.C.; CE COMERCIAL, S.A.C.; and TOWNSEND BROTHERS AG ENTERPRISES, LLC,

Plaintiffs,

v.

C.H. ROBINSON WORLDWIDE, INC., d/b/a C.H. Robinson Company, Inc.; C.H. ROBINSON COMPANY; and C.H. ROBINSON COMPANY, INC.,

Defendants.

Case No. 20-CV-0252 (PJS/ECW)

ORDER

---

Francisco Guerro IV, Alexis Renae Garcia, and Mark Anthony John Fassold, WATTS GUERRA LLP; Ashlea Schwarz, Laura Fellows, and Richard M. Paul III, PAUL LLP; Craig A. Stokes, STOKES LAW OFFICE LLP; Jennifer A. Neal and Michael Montano, GUERRA LLP; Robert Andrew Pollom, KRW LAWYERS; Sean R. Cooper, KRIGEL NUGENT MOORE, P.C.; and Steven Landes Rowe, LEGAL AID OF WESTERN MISSOURI, for plaintiffs.

Global Fresh, S.A.C. and CE Comercial, S.A.C., pro se.

Patrick J. Rooney and Bradley Richard Hutter, FAFINSKI MARK & JOHNSON, P.A.; and Mark William Wallin and Christina M. Janice, BARNES & THORNBURG LLP, for defendants.

Plaintiffs Moore Family Farms ("Moore"), Rentz Family Farms ("Rentz"), Phil Sandifer & Sons Farms ("Sandifer"), Powe Farms ("Powe"), Townsend Brothers ("Townsend"), Global Fresh, and CE Comercial (collectively, "Growers") brought this action against defendant C.H. Robinson Worldwide, Inc. ("CHR"), alleging violations of the Perishable Agricultural Commodities Act ("PACA"), breaches of contract, breaches of fiduciary duty, and breaches of the implied covenant of good faith and fair dealing. Between 2017 and 2019, Growers entered into exclusive contracts with CHR under which CHR agreed to "endeavor" to market and sell Growers' produce to CHR's customers. Growers' main contention is that CHR favored other farmers over Growers in sourcing produce, often leaving Growers' produce to rot.

This matter is before the Court on CHR's motion for summary judgment against Townsend, Rentz, Sandifer, Moore, and Powe, and CHR's motion for default judgment against Global Fresh and CE Comercial. ECF Nos. 225, 229. For the following reasons, the Court grants CHR's motion for summary judgment in part and grants CHR's motion for default judgment in full.

## I. BACKGROUND

CHR is a logistics company that sources fresh produce for its customers from farmers around the world. Defs.' Br. at 2, ECF No. 230; Pls.' Br. at 1 n.1, ECF No. 233. CHR and Growers entered into materially similar contracts under which Growers

agreed to appoint CHR as their "exclusive sales agent" for the sale of their produce. *See, e.g.*, Hutter Decl. Ex. A § 3. CHR did not purchase produce directly from Growers, but rather agreed to "endeavor" to market Growers' produce to CHR's customers and sell the produce to those customers "on a consignment basis." *Id.* §§ 3, 5(a). Growers were responsible for growing, harvesting, and packing produce to CHR's specifications for shipment to CHR's customers. *Id.* § 4. CHR was responsible for marketing the produce, negotiating prices with buyers, and arranging shipping. *Id.* § 5(b). For its services, CHR was paid a commission calculated as a percentage of the final sales price. *Id.* § 5(3).

Townsend, Rentz, and Sandifer allege that CHR failed to market and sell their produce as agreed. Moore separately alleges that CHR failed to provide timely notice when prospective buyers rejected its produce, and failed to pay Moore for produce that buyers rejected after CHR had directed Moore to pack and ship that very produce. Finally, Powe claims several categories of damages stemming from various violations of PACA and breaches of contract.

## II. ANALYSIS

### *A. Standard of Review*

Summary judgment is warranted when the evidence in the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P 56(a). A fact is "material" if affects the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When a party moves for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250 (citation omitted). If a "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," summary judgment against the nonmoving party is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

*B. Townsend, Rentz, and Sandifer Claims*[1]

Growers' PACA, contract, fiduciary-duty, and implied-covenant claims all essentially assert the same wrong and rely on the same (meager) evidence. PACA makes it unlawful for a "commission merchant, dealer, or broker . . . to fail, without reasonable cause, to perform any specification or duty, express or implied, arising out

---

[1]It is entirely unclear from the third amended complaint and the parties' briefs how exactly each claim connects to each plaintiff. With few exceptions, the briefs refer to the plaintiffs collectively without being clear about which plaintiff is making which claim. When the briefs do distinguish, they only cause more confusion. For example, the parties seem to agree that Moore asserts various claims separate and apart from the other plaintiffs, but Moore is never mentioned in any of the counts—nor in any other relevant allegation—in the third amended complaint. Regardless, based on the pleadings and briefing, the Court concludes that Townsend's, Rentz's, and Sandifer's claims are properly addressed together. The Court is unsure whether Moore and Powe share common claims with those three plaintiffs.

of any undertaking in connection with any [agricultural-commodity transaction]."

7 U.S.C. § 499b(4).  Insofar as Growers claim that CHR failed to perform express duties,

the claim is seemingly coextensive with Growers' breach-of-contract claim.  *Cf.

Coosemans Specialties, Inc. v. Dep't of Agric.*, 482 F.3d 560, 564 (D.C. Cir. 2007) (under

PACA, explicit duties are typically set forth in a contract); *see also* 3d Am. Compl.

¶¶ 81–84, ECF No. 177.  Growers allege that CHR breached their contracts by, among

other things, failing to "endeavor to identify a viable market for PRODUCTS," "market

such PRODUCTS on a consignment basis," and "endeavor to obtain the best prices for

the kind and quality of PRODUCTS produced by GROWER."  *See, e.g.*, Hutter Decl.

Ex. G § 5(a)–(b); Pls.' Br. at 29.

The parties spill a lot of ink disputing the sufficiency of the damages evidence,

but Growers' claims suffer from a more fundamental flaw:  Growers have submitted no

evidence about what CHR did (or did not do) to market and sell their produce.  The

only evidence that Growers have offered in support of their claims is the bare fact that

CHR sold disproportionately more of certain other farmers' produce than Growers'

produce.  That's it.  There is absolutely nothing in the record that would establish *why*

the sales were disproportionate, and thus there is absolutely nothing in the record that

would allow a jury to find that the sales were disproportionate due to CHR's failure to

"endeavor" to market and sell Growers' produce.  Indeed, despite the fact that the

parties spent years in discovery—and engaged in so many protracted discovery disputes that the Court was forced to appoint a special master—Growers apparently did not depose a single CHR representative to explore *why* there were disproportionate sales or whether the disproportionate sales had a "reasonable cause." Without a shred of evidence of what CHR did (or did not do) to market and sell Growers' produce, Growers cannot establish an essential element of their PACA and breach-of-contract claims. *See Washington v. City of St. Louis, Mo.*, 84 F.4th 770, 773 (8th Cir. 2023) ("[T]he moving party may discharge its [summary-judgment] burden by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." (cleaned up)).

Growers also argue that CHR failed to perform an "implied" duty under PACA to not to act "self-servingly" in its dealings with Growers. Pls.' Br. at 27–28. Growers do not identify the specific source of that supposed duty, but some PACA cases have recognized an implied "duty to engage in honest dealing." *See, e.g.*, *Coosemans Specialties, Inc.*, 482 F.3d at 566 (applying *Chevron* deference to conclude that "the Secretary's decision to construe the 'implied duty' clause as imposing a duty to engage in honest dealing—which includes a duty not to bribe USDA inspectors—is reasonable."). Insofar as Growers contend that CHR had an implied duty to deal with

Growers honestly, that duty is largely coextensive with Growers' implied-covenant and fiduciary-duty claims.

Under Minnesota law, a party to a contract breaches the implied covenant of good faith and fair dealing when it unjustifiably hinders the performance of the contract. *In re Hennepin Cnty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 502 (Minn. 1995); *Cent. Specialties, Inc. v. Minn. Dep't of Transp.*, 5 N.W.3d 409, 415–17 (Minn. Ct. App. 2024). Unjustifiably hindering performance includes acting in bad faith by "refus[ing] to fulfill some duty or contractual obligation based on an ulterior motive, not an honest mistake regarding one's rights or duties." *Cent. Specialties, Inc.*, 5 N.W.3d at 415 (quoting *Sterling Capital Advisors, Inc. v. Herzog*, 575 N.W.2d 121, 125 (Minn. Ct. App. 1998)). Similarly, Growers contend that CHR had a fiduciary duty of loyalty[2] to Growers that prohibited CHR from "profit[ing] from the relationship [or] engag[ing] in self-dealing without the principal's consent after full disclosure of facts." *Dahl v. Charles Schwab & Co., Inc.*, 545 N.W.2d 918, 925 (Minn. 1996) (citations omitted). Thus, breach of the implied duty of honest dealing under PACA, breach of the implied covenant of good faith and fair dealing, and breach of the fiduciary duty of loyalty each require some sort of dishonest or bad-faith conduct on CHR's part.

---

[2]The Court assumes for the sake of argument that such a fiduciary duty exists.

Each of these claims fail for the same reason as the contract claims: Growers have almost no evidence supporting their claims. Growers' only evidence that CHR acted in bad faith, dishonestly, or "self-servingly" is the disproportionate sale of other farmers' produce compared to Growers'. But the disproportionate sale of produce from other farmers, without more, is not evidence of an ulterior motive, self-dealing, or dishonesty.

To start, Growers point to no evidence that CHR somehow *profited* from the disproportionate sales by making more money selling the produce of the other farmers than it would have made selling the produce of Growers. Nor do Growers point to any evidence that CHR had any other nefarious reason to disfavor Growers' produce. Instead, Growers merely assert, without any evidentiary support, that CHR's disproportionate sale of other farmers' produce was self-serving. Pls.' Br. at 28, 32, 40. But unsworn assertions in a complaint or legal memorandum are not evidence, and Growers bear the burden to establish that some type of bad faith or dishonest conduct caused the disproportionate sale of other farmers' produce. *Johnson v. Exide Tech., Inc.*, 137 F.4th 676, 679 (8th Cir. 2025) ("Unsupported assertions of 'controverted' facts, however, cannot create a genuine dispute for trial."); *Washington*, 84 F.4th at 774 (holding that district court erred in relying on allegations in a complaint to find a dispute of fact for purposes of summary judgment).

Although disproportionate sales could be *consistent* with bad faith or dishonest conduct, they are also consistent with good faith and honest conduct. There are innumerable benign reasons that could explain why CHR sold more of the produce of some farmers and less of the produce of others, including mere happenstance.

In sum, no reasonable jury could find for Growers on these claims based on the evidence in the record. The Court therefore grants CHR's motion for summary judgment on these claims and dismisses them with prejudice.

*C. Moore's Claims*[3]

First, CHR moves for summary judgment on Moore's claim that CHR breached the contract by failing to notify Moore of the rejection of its produce. Under the contract, CHR was required to notify Moore of any rejection of produce by a CHR customer within one business day of that rejection. Moore Contract § 4(h), Hutter Decl. Ex. G. Moore claims that CHR failed to provide the required notice. CHR responds that, even if Moore is correct, Moore has no evidence that it was *damaged* as a result of CHR's alleged failure to give notice of rejection, and thus Moore's claim fails.

The Court agrees with CHR. Damages for breach of contract attempt "to place the plaintiff in the same position as if the breaching party had complied with the contract" by permitting the plaintiff to recover for "those damages that naturally and

[3]Moore has conceded that there are some duplicative damages claims for which there should be no double recovery.

necessarily result[ed] from the alleged breach." *Logan v. Norwest Bank Minn., N.A.*, 603 N.W.2d 659, 663 (Minn. Ct. App. 1999) (citations omitted). To recover for breach of contract, a plaintiff must show "a reasonable basis for approximating loss." *Jensen v. Duluth Area YMCA*, 688 N.W.2d 574, 579 (Minn. Ct. App. 2004) (citation omitted). "There can be no recovery for damages which are remote, conjectural, or speculative." *Id.* (citation omitted).

Here, Moore seeks as damages the full value of the rejected produce. But the measure of damages for lack of notice of rejection is the harm that "naturally and necessarily resulted" from *the lack of notice*, not from the *rejection of the produce*. Moore offers no evidence that Moore would or could have reclaimed and resold the rejected produce to a different buyer for its full price had notice of rejection been given as required. Without evidence providing a reasonable basis for approximating Moore's loss from the *lack of notice*, any damages are purely speculative. Accordingly, Moore's claim for breach of the notice provision is dismissed.

Second, CHR moves for summary judgment on Moore's claim that CHR breached the contract by failing to pay Moore for rejected produce. Under the contract, Moore retained "title to and all quality risks associated with PRODUCTS until delivery to and acceptance by" CHR's customers. Moore Contract § 4(g). Further, it was Moore's responsibility to meet CHR's quality specifications, which were set forth in

Exhibit B of the contract.  Moore Contract § 4(f), Ex. B.  Moore argues that CHR waived its contractual right to receive produce that met the Exhibit B standards when its agent directed Moore to pack and ship produce that did not meet those standards.

Under Minnesota law, waiver requires "an intentional relinquishment of a known right, and it must clearly be made to appear from the facts disclosed."  *Slidell, Inc. v. Millennium Inorganic Chems., Inc.*, 460 F.3d 1047, 1055 (8th Cir. 2006) (citations omitted).  "When a party acts in a way that is inconsistent with the terms of a contract, a fact finder can reasonably conclude that a party waived those contractual provisions."  *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 367 (Minn. 2009) (citations omitted).  "Waiver is ordinarily a question of fact for a jury, unless only one inference may be drawn from the facts."  *Pollard v. Southdale Gardens of Edina Condo. Assoc.*, 698 N.W.2d 449, 453 (Minn. Ct. App. 2005) (citation omitted).

Here, Moore testified that CHR's quality-control representative on Moore's farm directed Moore as to which produce to pick, pack, and ship.  Moore Dep. 89:14–91:8, Guerra Decl. Ex. 4.  According to Moore, the CHR representative made the final decisions about which produce was acceptable to CHR.  *Id.*

CHR maintains that its conduct was consistent with the contract, because CHR was merely directing Moore to do something it was already contractually bound to do.  But the conduct alleged by Moore is plainly inconsistent with the contractual language

that gave Moore—not CHR—both the right and responsibility for ensuring that its produce met CHR's quality specifications as set forth in Exhibit B. Moore Contract §§ 2(a), 4(f). A reasonable jury could find that CHR directed Moore to ship non-conforming produce that Moore otherwise would not have shipped—and that, by doing so, CHR shifted the risk of rejection from Moore to itself. As there is a question of fact about whether CHR intentionally relinquished its right to receive produce that met the Exhibit B standards, CHR's motion for summary judgment on Moore's rejection claim is denied.

### *D. Powe's Claims*

CHR argues that it is entitled to summary judgment on Powe's claims because the corporate representative that Powe designated under Fed. R. Civ. P. 30(b)(6) was not adequately prepared for her deposition. CHR contends that Powe's designee was unable to answer questions about five specific purchase orders without referring to her notes, which she did not bring to the deposition.

It is true that Powe's designee was unable to answer a handful of questions about the specific amounts of damages that Powe was claiming with respect to a few purchase orders. But the designee was able to identify the documents and methods she employed in calculating those damages. Little can be gleaned by reading the (extremely truncated) deposition excerpts submitted by CHR, but the confusion evidenced by the

excerpts appears to have been generated as much by the attorneys referring to different forms of accounting receipts as by a lack of preparation by Powe's designee. *See, e.g.*, Proctor Dep. 61:24–64:25, Hutter Decl. Ex. L.

In any event, even if Powe's designee was unable to answer a few questions, CHR had multiple means for acquiring the information that the designee was unable to provide—including seeking to continue the deposition so that the designee could review her notes and refresh her memory. CHR could also have sought a sanction that was commensurate with the alleged discovery violation, such as exclusion of evidence of damages for the specific purchase orders. *See Cedar Hill Hardware & Constr. Supply, Inc. v. Ins. Corp. of Hannover*, 563 F.3d 329, 345 (8th Cir. 2009) (noting that "that exclusion of testimony as to designated topics may be an appropriate sanction for a corporation's inadequate designation" (citing Fed. R. Civ. P. 37(b)(2))). Granting summary judgment against Powe on all of its claims would be grossly disproportionate to Powe's alleged violation, and therefore CHR's motion is denied (except with regard to Powe's withdrawn damages claim for the category "Load Should Have Been Sold On Contract").

## III. DEFAULT JUDGMENT

CHR moves for default judgment against plaintiffs Global Fresh and CE Comercial.

In 2017, Global Fresh and CHR contracted for Global Fresh to provide CHR with a minimum weekly volume of asparagus throughout the 2017–2018 growing season. Baumann Decl. Ex. A at 1, 6, ECF No. 227-1. CHR, acting as Global Fresh's sales agent, agreed to market and sell that asparagus to third parties in return for a commission on sales. *Id.* at 2.

In 2018 and 2019, Global Fresh—now jointly with CE Comercial—entered into similar contracts with CHR for the 2018–2019 and 2019–2020 growing seasons respectively. Baumann Decl. Ex. D, ECF No. 227-4; Baumann Decl. Ex. F, ECF No. 227-6. In the 2019 contract, CHR additionally agreed to advance Global Fresh and CE Comercial $1,000,000 to facilitate the growing season. Baumann Decl. Ex. F at 9.

Global Fresh breached the 2017 agreement by failing to provide the minimum weekly volume of asparagus for 15 weeks of the 2017–2018 season—in total, 93,154 fewer crates of asparagus than scheduled. Baumann Decl. Ex. B, ECF No. 227-2. According to USDA price reports, the sale of those crates would have yielded an additional $2,478,030.51 for which CHR would have received an 8% commission, or $198,242.44. *Id.*; Baumann Decl. Ex. G, ECF No. 227-7.

Global Fresh and CE Comercial breached the 2018 agreement by failing to provide the minimum weekly volume of asparagus for 23 weeks of the 2018–2019 season—in total, 102,735 fewer crates of asparagus than scheduled. Baumann Decl.

Ex. C,[4] ECF No. 227-3. According to USDA price reports, the sale of those crates would have yielded an additional $1,951,916 for which CHR would have received an 8% commission, or $156,153.28. *Id.*; Baumann Decl. Ex. G.

Global Fresh and CE Comercial breached the 2019 agreement by failing to provide the minimum weekly volume of asparagus for every week of the 2019–2020 season—in total, 722,520 fewer crates of asparagus than scheduled. Baumann Decl. Ex. E, ECF No. 227-5. According to USDA price reports, the sale of those crates would have yielded an additional $14,538,623 for which CHR would have received a 10% commission, or $1,453,862.30. *Id.*; Baumann Decl. Ex. G. As a result of the breach, CHR was forced to purchase cases of asparagus directly from Global Fresh and CE Comercial to cover the shortage, which it resold for a loss of $207,165. Baumann Decl. ¶¶ 11–15. Finally, Global Fresh and CE Comercial failed to repay CHR the $1,000,000 advance. *Id.* ¶ 16. All told, CHR's total damages for the breach of the 2019 agreement amount to $2,661,027.30.

CHR moved for default judgment against plaintiffs Global Fresh and CE Comercial. Both have been unrepresented and unresponsive in this matter since 2021,[5]

---

[4]Buamann's declaration mislabels Exhibits C and G.

[5]On March 2, 2021, the Special Master ordered withdrawing counsel to serve the third amended complaint as well as defendants' answer and counterclaims on Global Fresh and CE Comercial, and ordered Global Fresh and CE Comercial to show cause

(continued...)

*see* ECF Nos. 176, 180, even though "[i]t has been the law for the better part of two centuries that a corporation may appear in federal courts only through licensed counsel," *Rowland v. California Men's Colony*, 506 U.S. 194, 201–02 (1993).

The Clerk of Court entered default against Global Fresh and CE Comercial on November 14, 2024.  ECF No. 224.  On February 19, 2025, the Court held a hearing on CHR's motion for default judgment, at which neither Global Fresh nor CE Comercial appeared.  ECF No. 244.  CHR has met all of the requirements of Fed. R. Civ. P. 55, and therefore is entitled to a default judgment.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' motion for summary judgment [ECF No. 229] is GRANTED IN PART and DENIED IN PART as follows:

    a. All of Townsend's, Rentz's, and Sandifer's claims are DISMISSED WITH PREJUDICE AND ON THE MERITS.

---

[5](...continued)
why counsel's motion to withdraw should not be granted.  ECF No. 176.  Defendants filed their answer and counterclaims on March 24, 2021.  ECF No. 179.  Global Fresh and CE Comercial did not respond to the order to show cause, and the motion to withdraw was granted on April 1, 2021.  ECF No. 180.  Thus, Global Fresh and CE Comercial were still represented when the counterclaims were filed and were properly served through their counsel of record.  *See* Fed. R. Civ. P. 5(b)(1), 5(b)(2)(E).

  b. Moore's notice claim is DISMISSED WITH PREJUDICE AND ON THE MERITS.

  c. Moore's and Powe's claims insofar as they rely on the withdrawn requests for damages are DISMISSED WITH PREJUDICE AND ON THE MERITS.

  d. The motion is denied in all other respects.

2. Defendants' motion for default judgment [ECF No. 225] is GRANTED as follows:

  a. Plaintiffs CE Comercial, S.A.C.'s and Global Fresh, S.A.C.'s claims against defendants are DISMISSED WITH PREJUDICE for failure to prosecute.

  b. Plaintiff Global Fresh, S.A.C. is liable to C.H. Robinson Company, Inc. in the amount of $198,242.44, along with applicable prejudgment interest, for breaches of the 2017 agreement. C.H. Robinson Company, Inc. may seek attorney's fees pursuant to the 2017 agreement and Fed. R. Civ. P. 54(d)(2).

  c. Plaintiffs CE Comercial, S.A.C. and Global Fresh, S.A.C. are jointly and severally liable to C.H. Robinson Company, Inc. in the amount

        of $156,153.28, along with applicable prejudgment interest, for breaches of the 2018 agreement.

d. Plaintiffs CE Comercial, S.A.C. and Global Fresh, S.A.C. are jointly and severally liable to C.H. Robinson Company, Inc. in the amount of $2,661,027.30, along with applicable prejudgment interest, for breaches of the 2019 agreement.

e. C.H. Robinson Company, Inc. may tax its costs and disbursements against plaintiffs CE Comercial, S.A.C. and Global Fresh, S.A.C.

f. LET JUDGMENT BE ENTERED ACCORDINGLY with respect to plaintiffs CE Comercial, S.A.C. and Global Fresh, S.A.C.[6]

Dated: August 21, 2025

/s/ Patrick J. Schiltz
Patrick J. Schiltz, Chief Judge
United States District Court

[6]Given that these counterclaims affect only the defaulting plaintiffs, there does not seem to be any just reason to delay the entry of final judgment against Global Fresh and CE Comercial. Fed. R. Civ. P. 54(b) (providing that the Court needs to expressly determine that "there is no just reason for delay" before entering judgment as to only some of the parties).